TROY LAW, PLLC
John Troy (JT 0481)
Aaron Schweitzer (AS 6369)
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective and potential Rule 23 Class*

**Case No. 20-cv-05484**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT COURT OF NEW YORK**
---------------------------------------------------------------x
QUNBIN YUAN,
JIAN KANG LIU
    a/k/a James Liu,
CHANGLI GAO
    a/k/a Charlie Gao, and
MING XIANG,
*on their own behalf and on behalf of others similarly situated*

                    Plaintiffs,
                  v.

AA FOREST INC.
    d/b/a Lasership;
LASERSHIP INC
    d/b/a LaserShip; and
AMAZON.COM, INC.
    d/b/a Amazon.com;
YOU LIANG GUO
    a/k/a Kevin Guo, and
BRETT BISSELL

                    Defendants.
---------------------------------------------------------------x

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**


**COMPLAINT**


**DEMAND FOR JURY TRIAL**

    Plaintiffs QUNBIN YUAN, JIAN KANG LIU a/k/a James Liu, CHANGLI GAO a/k/a

Charlie Gao, and MING XIANG (hereinafter referred to as Plaintiffs), on behalf of themselves

and others similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this

complaint against Defendants AA FOREST INC. d/b/a Lasership; LASERSHIP INC d/b/a

LaserShip; and AMAZON.COM, INC. d/b/a Amazon.com; YOU LIANG GUO a/k/a Kevin

Guo, and BRETT BISSELL, and allege as follows:

**INTRODUCTION**

1.      This action is brought by the Plaintiffs QUNBIN YUAN, JIAN KANG LIU a/k/a James Liu, CHANGLI GAO a/k/a Charlie Gao, and MING XIANG, on behalf of themselves as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), arising from Defendants' various willful, malicious, and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) out of pocket expenses to delivery experts on the road, (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

4.      Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and

net wages for each pay day, (4) out of pocket expenses to delivery experts on the road, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

5.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Eastern District Court of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.     From on or about July 08, 2020 to July 13, 2020, Plaintiff QUBIN YUAN was employed by Defendants to work as a deliveryman.

8.     From on or about July 15, 2020 to July 17, 2020, Plaintiff JIAN KANG LIU A/K/A JAMES LIU was employed by Defendants to work as a deliveryman.

9.     From on or about July 11, 2020 to July 17, 2020, Plaintiff CHANGLI GAO A/K/A CHARLIE GAO was employed by Defendants to work as a deliveryman.

10.     From on or about July 09, 2020 to July 13, 2020, Plaintiff MING XIANG was employed by Defendants to work as a deliveryman.

## DEFENDANTS

### Corporate Defendants

11.     Defendant AA FOREST INC. d/b/a Lasership is a domestic business corporation organized under the laws of the State of New York with a principal address at 16 Stoner Ave., Apt. 3B Great Neck, NY, 11021.

12.     Defendant operated a warehouse at 57-47 47th Street, Queens, NY 11378.

13.     Defendant LASERSHIP INC d/b/a LaserShip is a domestic business corporation organized under the laws of the State of New York with a principal address at 1912 Woodford Rd, Vienna, VA 22182.

14.     Defendant AMAZON.COM, INC. d/b/a Amazon.com is a domestic business corporation organized under the laws of the State of New York with a principal address at 251 Little Falls Drive, Wilmington, DE 19808.

### Owner/Operator Defendants

15.     YOU LIANG GUO a/k/a Kevin Guo known as Owner to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at AA FOREST INC. d/b/a Lasership.

16.     YOU LIANG GUO a/k/a Kevin Guo hired Plaintiff QUBIN YUAN.

17.     YOU LIANG GUO a/k/a Kevin Guo hired Plaintiff JIAN KANG LIU a/k/a James Liu.

18.     YOU LIANG GUO a/k/a Kevin Guo hired Plaintiff CHANGLI GAO a/k/a Charlie Gao.

19.     YOU LIANG GUO a/k/a Kevin Guo hired MING XIANG.

20.     YOU LIANG GUO a/k/a Kevin Guo paid all employees, on a Monday.

21.     YOU LIANG GUO a/k/a Kevin Guo acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AA FOREST INC. d/b/a Lasership.

22.     BRETT BISSELL known as Owner to Plaintiff and CEO of LASERSHIP INC d/b/a LaserShip, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at LASERSHIP INC d/b/a LaserShip.

23.     BRETT BISSELL acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with LASERSHIP INC d/b/a LaserShip.

## STATEMENT OF FACTS

### Defendants Constitute an Enterprise

24.     Upon information and belief, Corporate Defendants AA FOREST INC. d/b/a Lasership; LASERSHIP INC d/b/a LaserShip; and AMAZON.COM, INC. d/b/a Amazon.com are joint employers of Plaintiffs and constitute an enterprise as the term is defined by 29 USC §203(r) insofar as they share staff, including Plaintiffs, pay Plaintiffs for the work performed at the enterprise no matter what location they worked; advertise the Corporate Defendants as an enterprise, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same partners.

25.     At all times relevant herein, AA FOREST INC. d/b/a Lasership; LASERSHIP

INC d/b/a LaserShip; and AMAZON.COM, INC. d/b/a Amazon.com was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

26.     AA FOREST INC. d/b/a Lasership delivered exclusively for LASERSHIP INC d/b/a LaserShip, which in turn exclusively delivered Amazon Prime packages to Amazon shoppers.

27.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by AA FOREST INC. d/b/a Lasership; LASERSHIP INC d/b/a LaserShip; and AMAZON.COM, INC. d/b/a Amazon.com.

28.     AA FOREST INC. d/b/a Lasership; LASERSHIP INC d/b/a LaserShip; and AMAZON.COM, INC. d/b/a Amazon.com are businesses engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

29.     AA FOREST INC. d/b/a Lasership; LASERSHIP INC d/b/a LaserShip; and AMAZON.COM, INC. d/b/a Amazon.com purchased and handled goods moved in interstate commerce.

## Wage and Hour Claims

30.     Defendants committed the following alleged acts knowingly, intentionally willfully, and maliciously against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

31.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

32.     While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

33.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

34.     Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

35.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

36.     Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

37.     Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### *Plaintiff QUBIN YUAN*

38.     From on or about July 08, 2020 to July 13, 2020, Plaintiff QUBIN YUAN was employed by Defendants to work as a LaserShip deliveryman delivering Amazon Prime goods in Brooklyn, NY.

39.     To begin work for Defendants, Plaintiff QUBIN YUAN had to give a $100 deposit to the employer.

40.     Defendants never refunded Plaintiff QUBIN YUAN the $100 deposit.

41.     Furthermore, Plaintiff QUBIN YUAN had to pay a systems fee of $30 per

week.

      42.     Plaintiff QUBIN YUAN also had to pay $15 for a piece of LaserShip uniform.

      43.     From on or about July 08, 2020 to July 13, 2020, Plaintiff QUBIN YUAN's regular work schedule ran as follows:

    a. From 08:00 (arrival at the company warehouse) at 57-47 47th Street, Queens, NY 11378 to 17:30 (finished the last Amazon Prime deliveries in Brooklyn) and 18:30 (return to Flushing) for ten and a half (10.5) hours on July 08, 2020;

    b. From 08:00 (arrival at the company warehouse) to 18:00 (finished the last Amazon Prime deliveries in Brooklyn) and 19:25 (return to Flushing) for eleven and four tenth hours (11.4) on July 09, 2020;

    c. From 08:00 (arrival at the company warehouse) to 18:00 (finished the last Amazon Prime deliveries in Brooklyn) and 19:25 (return to Flushing) for eleven and four tenth hours (11.4) on July 10, 2020;

    d. From 08:00 (arrival at the company warehouse) to 16:45 (finished the last Amazon Prime deliveries in Brooklyn) and 17:30 (return to Flushing) for nine and a half (9.5) hours on July 11, 2020;

    e. From 08:00 (arrival at the company warehouse) to 18:30 (finished the last Amazon Prime deliveries in Brooklyn) and 19:00 (return to Flushing) for eleven (11) hours on July 12, 2020;

    f. From 08:00 (arrival at the company warehouse) to 20:00 finished in Brooklyn, and 21:30 (return to Flushing) for thirteen and a half (13.5) hours on July 13, 2020

for a total of sixty seven and one third (67 1/3) hours each week.

44. From on or about July 08, 2020 to July 13, 2020, Plaintiff QUBIN YUAN was promised a daily rate of Two Hundred Dollars ($200) per day.

45. Specifically, Defendants promised One Hundred Dollars ($100) per round-trip from the warehouse in Queens to Brooklyn Amazon.com Prime customers, and that there would be two (2) trips per day.

46. However, Plaintiff QUBIN YUAN was given so many Amazon.com Prime packages to mail that each day he would only complete one trip.

47. Further, instead of being paid the promised rate of $200 per day ($100 times two), he was only paid at a daily rate of eighty dollars ($80).

48. Further, on the first day, Plaintiff QUBIN YUAN only received a half-rate for his first day.

49. Furthermore, Plaintiff QUBIN YUAN had a weekly "systems fee" of thirty dollars ($30) deducted from his pay for two weeks.

50. In total, Plaintiff QUBIN YUAN received two checks totalling $380.

51. At all relevant times, Plaintiff QUBIN YUAN was not paid overtime pay for overtime work.

52. At all relevant times, Plaintiff QUBIN YUAN was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

53. Throughout his employment, Plaintiff QUBIN YUAN was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

54.     Throughout his employment, Plaintiff QUBIN YUAN was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

55.     As part of Plaintiff's employment with Defendants, Plaintiff QUBIN YUAN was required to bear the cost of the purchase of a motor vehicle and the costs of the gasoline.

56.     In delivering Amazon Prime goods to Defendants' customers, Plaintiff QUBIN YUAN drives an average of 100 or so miles per day.

57.     Plaintiff QUBIN YUAN was not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

### *Plaintiff JIAN KANG LIU a/k/a James Liu*

58.     From on or about July 15, 2020 to July 17, 2020, Plaintiff JIAN KANG LIU a/k/a James Liu was employed by Defendants to work as a LaserShip deliveryman delivering Amazon Prime goods.

59.     To begin work for Defendants, Plaintiff JIAN KANG LIU a/k/a James Liu had to give a $100 deposit to the employer.

60.     Defendants never refunded Plaintiff JIAN KANG LIU a/k/a James Liu the $100 deposit.

61.     Furthermore, Plaintiff JIAN KANG LIU a/k/a James Liu had to pay a systems fee of $30 per week.

62.     Plaintiff JIAN KANG LIU a/k/a James Liu also had to pay $15 for a piece of LaserShip uniform.

63.     From on or about July 15, 2020 to July 17, 2020, Plaintiff JIAN KANG LIU a/k/a James Liu's work schedule ran as follows:

a.  07:00 (arrival at the company warehouse) to 14:30 (finished the last Amazon Prime deliveries in Brooklyn) for seven and a half (7.5) hours on July 15, 2020;

b.  08:00 (arrival at the company warehouse) to 17:15 (finished the last Amazon Prime deliveries in Brooklyn) for nine and a quarter (9.25) hours on July 16, 2020;

c.  08:00 (arrival at the company warehouse) to 17:20 (finished the last Amazon Prime deliveries in Brooklyn) for nine and a third (9 1/3) hours on July 17, 2020.

for a total of thirty three and six tenth (33.6) hours that week.

64.     At all relevant times, Plaintiff JIAN KANG LIU a/k/a James Liu did not have any break for lunch and dinner because there were 80-90 Amazon.com packages to deliver on any given day.

65.     From on or about July 15, 2020 to July 17, 2020, Plaintiff JIAN KANG LIU a/k/a James Liu was promised a daily rate of one hundred dollars $100 per trip, and two trips per day.

66.     However, Plaintiff JIAN KANG LIU a/k/a James Liu was only paid at a daily rate of Eighty Dollars ($80.00) per day.

67. At all relevant times, Plaintiff JIAN KANG LIU a/k/a James Liu was not paid overtime pay for overtime work.

68.     At all relevant times, Plaintiff JIAN KANG LIU a/k/a James Liu was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

69.     Throughout his employment, Plaintiff JIAN KANG LIU a/k/a James Liu was

not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

70.     Throughout his employment, Plaintiff JIAN KANG LIU a/k/a James Liu was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

71.     As part of Plaintiff's employment with Defendants, Plaintiff JIAN KANG LIU A/K/A JAMES LIU was required to bear the cost of the purchase of a motor vehicle and the costs of the gasoline.

72.     In delivering Amazon Prime goods to Defendants' customers, Plaintiff JIAN KANG LIU a/k/a James Liu drives an average of 100 or so miles per day.

73.     Plaintiff JIAN KANG LIU a/k/a James Liu was not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

### Plaintiff CHANGLI GAO a/k/a Charlie Gao

74.     From on or about July 11, 2020 to July 17, 2020, Plaintiff CHANGLI GAO a/k/a Charlie Gao was employed by Defendants to work as a deliveryman at 16 Stoner Ave, Apt. 3 Great Neck, NY, 11021.

75.     To begin work for Defendants, Plaintiff CHANGLI GAO a/k/a Charlie Gao had to give a $100 deposit to the employer.

76.     Furthermore, Plaintiff CHANGLI GAO a/k/a Charlie Gao had to pay a systems

fee of $30 per week.

77.     From on or about July 11, 2020 to July 17, 2020, Plaintiff CHANGLI GAO
a/k/a Charlie Gao's work schedule ran as follows:

      a.   08:00 (arrival at the company warehouse) to between 15:30 and 16:00 in

            Brooklyn 17:00 (return to Flushing) for nine (9) hours on July 11, 2020;

      b.   08:00 (arrival at the company warehouse) to between 17:00 and 17:30 for

            18:30(return to Flushing) for ten and a half (10.5) hours on July 12, 2020;

      c.   08:00 (arrival at the company warehouse) to between 17:00 and 17:30 for

            18:30(return to Flushing) for ten and a half (10.5) hours on July 13, 2020;

      d.   08:00 (arrival at the company warehouse) to between 17:00 and 17:30 for

            18:30(return to Flushing) for ten and a half (10.5) hours on July 14, 2020;

      e.   08:00 (arrival at the company warehouse) to between 18:00 and 18:30 for

            19:30(return to Flushing) for eleven and a half (11.5) hours on July 15, 2020;

      f.   08:00 (arrival at the company warehouse) to between 19:00 and 19:30 for

            20:30(return to Flushing) for twelve and a half (12.5) hours on July 16, 2020;

            and

      g.   08:00 (arrival at the company warehouse) to between 15:30 and 16:00 for

            17:00(return to Flushing) for nine (9) hours on July 17, 2020

for a total of seventy three and a half (73.5) hours that week.

78.     From on or about July 11, 2020 to July 17, 2020, CHANGLI GAO a/k/a
Charlie Gao was promised $80 per round-trip from the Queens warehouse to Brooklyn, and
two trips per day.

79.     Instead, Plaintiff CHANGLI GAO a/k/a Charlie Gao was paid only $40 (a half

rate of $75) for the first day, and a daily rate of $80 thereafter.

80.     In addition, Plaintiff CHANGLI GAO a/k/a Charlie Gao had to pay a systems

fee of $30 dollars.

81.     In total, Plaintiff CHANGLI GAO a/k/a Charlie Gao received two checks

totaling $490.

82. At all relevant times, Plaintiff CHANGLI GAO a/k/a Charlie Gao was not paid

overtime pay for overtime work.

83.     At all relevant times, Plaintiff CHANGLI GAO a/k/a Charlie Gao was never

informed of his hourly pay rate or any tip deductions toward the minimum wage.

84.     Throughout his employment, Plaintiff CHANGLI GAO a/k/a Charlie Gao was

not given a statement with his weekly payment reflecting employee's name, employer's

name, employer's address and telephone number, employee's rate or rates of pay, any

deductions made from employee's wages, any allowances claimed as part of the minimum

wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native

language.

85.     Throughout his employment, Plaintiff CHANGLI GAO a/k/a Charlie Gao was

not compensated at least at one-and-one-half his promised hourly wage for all hours worked

above forty (40) in each workweek.

86.     As part of Plaintiff's employment with Defendants, Plaintiff CHANGLI GAO

A/K/A CHARLIE GAO was required to bear the cost of the purchase of a motor vehicle and

the costs of the gasoline.

87.     In delivering Amazon Prime goods to Defendants' customers, Plaintiff

CHANGLI GAO a/k/a Charlie Gao drives an average of 100 or so miles per day.

88.     Plaintiff CHANGLI GAO A/K/A CHARLIE GAO was not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

**_Plaintiff MING XIANG_**

89.     From on or about July 09, 2020 to July 13, 2020, Plaintiff MING XIANG was employed by Defendants to work as a LaserShip deliveryman delivering Amazon Prime goods.

90.     To begin work for Defendants, Plaintiff MING XIANG had to give a $100 deposit to the employer.

91.     Defendants never refunded Plaintiff MING XIANG the $100 deposit.

92.     Furthermore, Plaintiff MING XIANG had to pay a systems fee of $30 per week.

93.     Plaintiff MING XIANG also had to pay $15 for a piece of LaserShip uniform.

94.     From on or about July 09, 2020 to July 13, 2020, Plaintiff MING XIANG's regular work schedule ran as follows:

   a.   08:00 (arrival at the company warehouse) to between 17:30 to 18:00 for ten (10) hours on July 9, 2020;

   b.   08:00 (arrival at the company warehouse) to between 19:00 to 19:45 for eleven and three quarter (11.75) hours on July 10, 2020;

   c.   08:00 (arrival at the company warehouse) to between 18:00 and 18:30 for ten and a half (10.5) hours on July 11, 2020;

   d.   08:00 (arrival at the company warehouse) to between 19:20 and 20:00 for twelve (12) hours on July 12, 2020; and

    e.   08:00 (arrival at the company warehouse) to between 19:00 and 19:30 for

        eleven and a half (11.5) hours on July 13, 2020

for a total of fifty five and three quarter (55.75) hours that week.

95.    At all relevant times, Plaintiff MING XIANG did not have time for lunch or for dinner, because he had to deliver between 80-90 packages per day.

96.    From on or about July 09, 2020 to July 13, 2020, Plaintiff MING XIANG was promised a daily rate of Two Hundred Dollars ($200) per day.

97.    Specifically, Defendants promised One Hundred Dollars ($100) per round-trip from the warehouse in Queens to Brooklyn Amazon.com Prime customers, and that there would be two (2) trips per day.

98.    However, Plaintiff MING XIANG was given so many Amazon.com Prime packages to mail that each day he would only complete one trip.

99.    Further, instead of being paid the promised rate of $200 per day ($100 times two), he was only paid at a daily rate of eighty dollars ($80).

100.    Further, on the first day, Plaintiff MING XIANG only received a half-rate for his first day.

101.    Furthermore, Plaintiff MING XIANG had a weekly "systems fee" of sixty dollars ($60) deducted from his pay as well.

102.    At all relevant times, Plaintiff MING XIANG was not paid overtime pay for overtime work.

103.    At all relevant times, Plaintiff MING XIANG was not paid overtime pay for overtime work.

104.    At all relevant times, Plaintiff MING XIANG was never informed of his

hourly pay rate or any tip deductions toward the minimum wage.

105.    Throughout his employment, Plaintiff MING XIANG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

106.    Throughout his employment, Plaintiff MING XIANG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

107.    As part of Plaintiff's employment with Defendants, Plaintiff MING XIANG was required to bear the cost of the purchase of a motor vehicle and the costs of the gasoline.

108.    In delivering Amazon Prime goods to Defendants' customers, Plaintiff MING XIANG drives an average of 100 or so per day.

109.    Plaintiff MING XIANG was not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

## COLLECTIVE ACTION ALLEGATIONS

110.    Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

111.     Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

112.     All said persons, including Plaintiffs, are referred to herein as the "Class."

113.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

114.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

115.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

b. Whether Plaintiffs and Class members are promised and not paid at their promised wages;

c. Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

d. Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

e. Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

f. Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

g. Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

h. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

i. Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

j. At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

116. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same

corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### Adequacy

117.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

### Superiority

118.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources;

however, treating the claims as a class action would result in a significant saving of these

costs. The prosecution of separate actions by individual members of the Class would create a

risk of inconsistent and/or varying adjudications with respect to the individual members of the

Class, establishing incompatible standards of conduct for Defendants and resulting in the

impairment of Class members' rights and the disposition of their interests through actions to

which they were not parties. The issues in this action can be decided by means of common,

class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion

methods to efficiently manage this action as a class action.

119.    Upon information and belief, Defendants and other employers throughout the

state violate the New York Labor Law. Current employees are often afraid to assert their

rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing

claims because doing so can harm their employment, future employment, and future efforts to

secure employment. Class actions provide class members who are not named in the complaint

a degree of anonymity which allows for the vindication of their rights while eliminating or

reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Unpaid Wages
Brought on behalf of the Plaintiffs and the FLSA Collective]**

120.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

121.    At all relevant times, Defendants had a policy and practice of refusing to pay

Plaintiffs in full, and the similarly situated collective action members, for some or all of the

hours they worked.

122.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

123.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Unpaid Wages
### Brought on behalf of Plaintiffs and Rule 23 Class]

124.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

125.     At all relevant times, Plaintiffs are employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

126.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

127.     Defendants knowingly, willfully, and maliciously violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

128.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime
### Brought on behalf of the Plaintiffs QUNBIN YUAN, JIAN KANG LIU a/k/a James Liu,
### CHANGLI KAO a/k/a Charlie Kao and the FLSA Collective]

129.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

130.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

131.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

132.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

133.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

134.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

135.    Defendants willfully and maliciously failed to notify Plaintiffs and FLSA

Collective of the requirements of the employment laws in order to facilitate their exploitation

of Plaintiff' and FLSA Collectives' labor.

136.    Defendants knowingly, willfully, and maliciously disregarded the provisions of

the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class

Members the statutory overtime rate of time and one half for all hours worked in excess of

forty (40) per week when they knew or should have known such was due and that failing to

do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.
**[Violation of New York Labor Law—Failure to Pay Overtime
Brought on behalf of Plaintiffs QUNBIN YUAN, JIAN KANG LIU a/k/a James Liu,
CHANGLI KAO a/k/a Charlie Kao and Rule 23 Class]**

137.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

138.    An employer who fails to pay the minimum wage shall be liable, in addition to

the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%)

before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft

Prevention Act, and interest.

139.    At all relevant times, Defendants had a policy and practice of refusing to pay

the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs

and the class are entitled to.

140.    Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

141.    Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
Brought on behalf of Plaintiff and Rule 23 Class]**

142.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

143.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

144.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

145.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

146.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Wage Statements Brought on behalf of Plaintiff and Rule 23 Class]

147.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

148.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

149.     Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

150.     Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT VII.
### [Defendants' Failure To Pay To Delivery Experts Working "On The Road" Brought on Behalf of Plaintiff and the Class]

151.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

152.     Throughout the relevant period, Defendants required their delivery experts to maintain and provide a safe, functioning, insured and legally-operable automobile to make deliveries.

153.     Throughout the relevant period, Defendants required their delivery experts to bear all of the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate for businesses and employees to use in computing the *minimum* deductible costs of operating an automobile for business purposes.

154.     For 2019, the IRS Standard Mileage Rate is $0.575 per mile.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory

and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and

one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of out-of-pocket breach-of-contract delivery costs for motorcycle

expenses incurred and expended by Plaintiff on Defendants' bequest and behalf;

h)      An award of liquidated and/or punitive damages as a result of Defendants'

knowing, willful, and malicious failure to pay wages at least the hourly minimum wage,

overtime compensation pursuant to 29 U.S.C. §216;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to

provide a Time of Hire Notice detailing rates of pay and payday;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to

provide a paystub that lists employee's name, employer's name, employer's address and

telephone number, employee's rate or rates of pay, any deductions made from employee's

wages, any allowances claimed as part of the minimum wage, and the employee's gross and

net wages for each pay day;

k)      An award of liquidated and/or punitive damages as a result of Defendants'

willful and malicious failure to overtime compensation, and "spread of hours" premium

pursuant to New York Labor Law;

l)      An award of costs and expenses of this action together with reasonable

attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)      The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety

days following the issuance of judgment, or ninety days after expiration of the time to appeal

and no appeal is then pending, whichever is later, the total amount of judgment shall

automatically increase by fifteen percent, as required by NYLL §198(4); and

       p)       Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.


## DEMAND FOR TRIAL BY JURY

       Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs

demand a trial by jury on all questions of facts.


Dated: Flushing, New York

November 15, 2020

                       TROY LAW, PLLC
                       *Attorneys for the Plaintiffs, proposed FLSA*
                       *Collective and potential Rule 23 Class*

                       /s/ John Troy
                       John Troy (JT0481)
                       Aaron Schweitzer (AS 6369)