UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                :
**QUNBIN YUAN** *et al.*,                                       :
                                                                :
                                   Plaintiffs,                  :
                                                                :  **MEMORANDUM DECISION AND**
              – against –                                       :  **ORDER**
                                                                :
                                                                :  20-CV-5484 (AMD) (MMH)
**AA FOREST, INC.** *et al.*,                                   :
                                                                :
                                   Defendants.                  :
                                                                :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On November 15, 2020, the plaintiffs brought this putative collective and class action, asserting claims under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*, against AA Forest, Inc. ("AA Forest"), LaserShip, Inc. ("LaserShip"), You Liang Guo and Brett Bissell (together, the "defendants").[1] Before the Court are the defendants' motions to dismiss for failure to state a claim. (ECF Nos. 32, 33.) As explained below, the motions are granted.

## BACKGROUND

AA Forest is a New York-based business that provides delivery services for LaserShip, a Virginia-based business that, in turn, provides delivery services for corporate clients, including Amazon. (ECF No. 1 ¶¶ 11-14, 26.) The individual defendants, You Liang Guo and Brett Bissell, are AA Forest's owner and LaserShip's CEO, respectively. (*Id.* ¶¶ 15, 22.) The defendants hired the named plaintiffs as delivery drivers for short periods in July 2020—one

---

[1] The plaintiffs initially named Amazon.com, Inc. as a defendant, but voluntarily dismissed Amazon from the case on January 4, 2021. (ECF No. 12.)

plaintiff worked for only two days, and the most any plaintiff worked was six days.[2] (*Id.* ¶¶ 7-10.) The plaintiffs assert that the defendants are "joint employers and constitute an enterprise" within the meaning of the FLSA and NYLL, and that their employment was "directly essential" to the defendants' joint business. (*Id.* ¶ 24 (citing 29 U.S.C. § 203(r)); *id.* ¶ 27.) As for Guo and Bissell, the plaintiffs allege that each had the "power to hire and fire employees, . . . supervised and controlled employee work schedules or conditions of employment, . . . determined the rate and method of payment, and . . . maintained employee records at" their respective companies. (*Id.* ¶¶ 15, 23.) The plaintiffs further allege that Guo hired each of them, and paid "all employees, on a Monday." (*Id.* ¶¶ 16-20.)

The plaintiffs claim that the defendants, collectively, did not pay them a minimum wage, overtime or spread-of-hours pay for workdays lasting longer than ten hours. (*Id.* ¶¶ 2, 31, 36.) According to the complaint, the plaintiffs arrived at the defendants' "company warehouse" in Queens, and then were dispatched to make deliveries in Brooklyn. (*Id.* ¶¶ 38, 43, 63, 77, 89, 94, 97.) Despite "promis[ing]" them fixed daily rates from $160 to $200, the defendants paid them only $80 or less each day. (*Id.* ¶¶ 44-48, 65-66, 78-79, 96-100.) The plaintiffs incurred various expenses for which they were not reimbursed, including gasoline and costs to operate the cars they drove. (*Id.* ¶¶ 39-42, 55-57, 59-62, 71-73, 75-76, 86-88, 90-93, 107-09.) In addition, the plaintiffs allege that the defendants did not provide information related to their pay as required under New York law. (*Id.* ¶¶ 33-35, 37.)

The plaintiffs raise claims against the defendants under the FLSA and NYLL for unpaid wages (*id.* ¶¶ 120-28), and unpaid overtime. (*Id.* ¶¶ 129-41.) They also assert claims solely

---

[2] Yuan worked from July 8, 2020 to July 13, 2020 for a total of 67.33 hours (*id.* ¶ 43); Liu worked from July 15, 2020 to July 17, 2020 for a total of 33.6 hours (*id.* ¶ 63); Gao worked from July 11, 2020 to July 17, 2020 for a total of 73.5 hours (*id.* ¶ 77); and Xiang worked from July 9, 2020 to July 13, 2020 for a total of 55.75 hours. (*Id.* ¶ 94.)

under the NYLL for failure to provide time-of-hire wage notices (*id.* ¶¶ 142-46), failure to provide wage statements (*id.* ¶¶ 147-150), and failure to pay "delivery experts 'working on the road.'" (*Id.* ¶¶ 151-54.) On behalf of themselves and others similarly situated,[3] the plaintiffs seek declaratory relief, injunctive relief, recovery of unpaid wages and unpaid overtime pay, statutory penalties, liquidated damages and attorneys' fees. (*Id.* at 27-28.)

On May 20, 2021, the defendants moved to dismiss all claims against them in two separately-filed motions—one by LaserShip and Bissell, and the other by AA Forest and Guo. (ECF Nos. 32, 33.) The plaintiffs oppose, and in the alternative, request leave to amend. (ECF Nos. 34-38.)

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). Although detailed factual allegations are not required, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

---

[3] The plaintiffs seek to certify the case as a collective action under the FLSA, as well as a class action for their state law claims under Federal Rule of Civil Procedure 23. (ECF No. 1 ¶ 110-19.)

## DISCUSSION

Although they state their arguments in different terms, both sets of defendants argue in essence that the complaint does not adequately allege an employer-employee relationship within the meaning of the FLSA and NYLL. AA Forest and Guo argue that the plaintiffs' allegations in support of their employer status are conclusory and merely restate the applicable standards. (ECF No. 33-1 at 6-7; ECF No. 40 at 6-9.) They also assert that the plaintiffs were independent contractors and therefore not subject to the FLSA. (ECF No. 33-1 at 7-10; ECF No. 40 at 8-11.) LaserShip and Bissell argue that the complaint does not adequately allege that LaserShip or Bissell jointly employed them (ECF No. 32-1 at 9-14; ECF No. 39 at 6-9), and that the plaintiffs' allegations of a single joint enterprise are deficient. (ECF No. 32-1 at 15-17; ECF No. 39 at 10-11.)

Only an employer may be held liable for violations of the FLSA and NYLL. In accordance with the Act's remedial purpose, the FLSA broadly defines an "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d), and to "employ" as including "to suffer or permit to work."[4] *Id.* § 203(g); *see Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("The Supreme Court has emphasized the

---

[4] The NYLL defines "employee" and "employer" in similarly broad terms. *See* N.Y. Lab. Law § 651(5) (defining "employee" as "any individual employed or permitted to work by an employer in any occupation"); *id.* § 651(6) ("employer" includes "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer"). Accordingly, "[c]ourts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); *Hong v. JP White Plains, Inc.*, No. 19-CV-5018, 2021 WL 1226566, at *5 (S.D.N.Y. Mar. 31, 2021) ("[A]nalysis of the employment relationship under both statutes is based on the same factors."); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013) ("[T]here appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)."). Therefore, my analysis of the defendants' employer status under the FLSA applies equally to the plaintiffs' NYLL claims.

'expansiveness' of the FLSA's definition of employer." (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973))); *Herman*, 172 F.3d at 139 ("[T]he remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984))).

Accordingly, "the determination of whether an employer-employee relationship exists for purposes of the FLSA [and NYLL] should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. N.Y.C. Health & Hosp. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). "The 'economic reality' test applies equally to whether workers are employees and to whether managers or owners are employers." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). However, as discussed below, courts rely on factors that vary "depending on the FLSA question at issue and the context in which it arises." *Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 167 (2d Cir. 2014); *Barfield*, 537 F.3d at 142-43 (noting that various tests "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA" (internal quotation marks and citation omitted)).

The first test determines whether an alleged employer exercises "formal control" over a worker. *Carter*, 735 F.2d at 12. Under *Carter*, courts consider whether the defendant: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104 (quoting *Carter*, 735 F.2d at 12). While "formal control over employees is sufficient" to allege an employer relationship, "it is not necessary[.]"

*Xiaoyan Liu v. Canteen 82 Inc.*, No. 17-CV-7862, 2018 WL 6067228, at *5 (S.D.N.Y. Nov. 20, 2018).

Under a second test, courts analyze whether a defendant has functional control over workers in the absence of formal control. *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 72 (2d Cir. 2003). Relevant factors include:

> (1) whether [the alleged employers'] premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged employers'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employers] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the alleged employers].

*Id.* The Second Circuit has clarified that the *Zheng* factors are relevant in cases alleging joint employment by multiple defendants. *Id.* at 67; *see also Greenawalt v. AT & T Mobility LLC*, 642 F. App'x 36, 38 (2d Cir. 2016) (finding *Zheng*'s functional control factors relevant when determining whether a contractor and subcontractor have joint employer status). "'[J]oint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the FLSA.'" *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 204-05 (S.D.N.Y. 2014) (quoting 29 C.F.R. § 791.2(a)).

In the context of multiple employers, district courts have also applied the "single integrated enterprise" test "to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (collecting cases).[5] Courts applying this test "examine

---

[5] While "there is some disagreement among district courts" within the Second Circuit "with respect to whether the single-integrated-enterprise theory . . . is appropriate in the FLSA context," *Juarez*, 29 F. Supp. 3d at 368 n.3, the parties do not dispute its applicability in this case. (ECF No. 32-1 at 10-13; ECF No. 34 at 16-18.)

whether the companies have (i) 'interrelation of operations,' (ii) 'common management,' (iii) 'centralized control of labor relations,' and (iv) 'common ownership or financial control.'" *Chen Lin v. Dolar Shop Rest. Grp., LLC*, No. 16-CV-2474, 2021 WL 681075 (E.D.N.Y. Feb. 22, 2021) (quoting *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014)). The test "is usually used to determine whether employers at different arms of a corporate family shared a common employer." *Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18-CV-6018, 2019 WL 633355, at *6 (S.D.N.Y. Feb. 14, 2019).

Finally, to determine whether an individual is an employee or an independent contractor, courts consider the following non-exclusive factors:

> (1) the degree of control the employer exercises over the workers, (2) the workers' opportunity for profit or loss and their investment in the employer's business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship between the employer and employee, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Sup. Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988) (noting the test allows courts to judge whether, "as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves"); *Greenawalt*, 642 F. App'x at 38 (describing the *Brock* factors as relevant for "distinguishing between independent contractors and employees").

Although a court can consider each of these overlapping factors, no single factor is dispositive, and a court must make its determination "on a case-by-case basis by review of the totality of the circumstances." *Irizarry*, 722 F.3d at 104. With these principles in mind, I consider whether the plaintiffs have adequately alleged an actionable employment relationship with respect to each defendant. For the reasons below, I find that the plaintiffs' allegations do not survive a motion to dismiss.

## I. Kevin Guo

Guo and AA Forest argue that the plaintiffs' allegations of an employment relationship are too general to state a claim for relief, and that the plaintiffs were hired as independent contractors, not "employees," as demonstrated by an agreement—signed by each named plaintiff—that designates them as independent contractors. (ECF Nos. 33-1, 40.) Guo and AA Forest included the agreement and a supporting affidavit from Guo as exhibits to their motion to dismiss. (ECF Nos. 33-2, 33-3.)

As an initial matter, the Court may not consider the agreement or the Guo declaration at this stage. In ruling on a Rule 12(b)(6) motion, courts can consider materials outside of the pleadings if they are incorporated by reference into the complaint, or "where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). Conceding that the complaint does not mention the agreement, AA Forest and Guo nevertheless urge the Court to consider it because each plaintiff received and signed a copy, and because certain allegations in the complaint are "consistent" with terms in the agreement. (ECF No. 33-1 at 8-9 (arguing that the complaint is "framed upon this Agreement").) These reasons are unavailing. *See Tubbs v. Stony Brook Univ.*, No. 15-CV-0517, 2016 WL 8650463, at *4 (S.D.N.Y. Mar. 4, 2016) ("A document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint.").

Moreover, even if the agreement could be considered at this stage, it would be not dispositive. *See Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 141 (2d Cir. 2017) (finding that an independent contractor designation in an agreement is "pertinent to the 'parties' beliefs

about the nature of the relationship,'" but is "not controlling" (quoting *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 564 (7th Cir. 2009) and *Brock*, 840 F.2d at 1059)); *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) (finding that the economic reality test "governs how a relationship is to be characterized in relation to the FLSA"—not "[a]n employer's characterization of an employee" (citing *Brock*, 840 F.2d at 1059)). In any event, I can determine whether plaintiffs have sufficiently alleged an employer-employee relationship without considering the agreement.

The plaintiffs' allegations about Guo are these: he was an "Owner" at AA Forest who "had the power to hire and fire employees;" he "supervised and controlled employee work schedules or conditions of employment;" he "determined the rate and method of payment;" and he "maintained employee records at [AA Forest]." (ECF No. 1 ¶ 15.) The other factual allegations are that Guo hired each plaintiff, and paid "all employees[] on a Monday." (*Id.* ¶¶ 16-20.)

These allegations do not adequately demonstrate that Guo possessed the "power to control the workers in question." *Herman*, 172 F.3d at 139. The allegations in the complaint—that Guo had the power to hire, fire, set wages, set work conditions and maintain employment records—are merely restatements of the four *Carter* factors, and are thus too conclusory to establish a claim for relief. *See Chen Lin*, 2021 WL 681075, at *8 (collecting cases dismissing complaints "when they merely allege in allege terms that a defendant performed the functions described as relevant in *Carter*"); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-CV-5735, 2017 WL 2600051, at *4 (S.D.N.Y. June 15, 2017) ("[B]oilerplate recitation of the four *Carter* factors is not entitled to the assumption of truth" (citing *Iqbal*, 556 U.S. at 678)). Nor can I infer an employer-employee relationship based on the allegation that Guo was an "Owner."

*Irizarry*, 722 F.3d at 109 (holding that "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status"); *Han Dynasty, Inc.*, 2019 WL 633355, at *7 ("[T]he allegation that [an individual defendant] held ownership positions does not by itself make them [an] employer." (citations omitted)).

The remaining two allegations—that Guo hired each named plaintiff and paid "all employees" on Mondays (ECF No. 1 ¶¶ 16-20)—plead minimal facts relating to the first and third *Carter* factors. But there is almost no factual detail that would support a finding that Guo controlled the plaintiffs' employment. *See Irizarry*, 722 F.3d at 109 ("[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."). The complaint does not allege facts showing that Guo supervised the plaintiffs, controlled their working conditions, maintained employment records or interacted with them. The absence of these allegations weighs against a finding that an employment relationship exists. *See, e.g., Kaplan v. Wings of Hope Residence, Inc.*, No. 18-CV-2972, 2020 WL 616630, at *7 (E.D.N.Y. Feb. 7, 2020) (finding plaintiffs' claims insufficient where they alleged some hiring and firing authority but did not "raise any allegations pertaining to two of the four prongs of the *Carter* test").[6]

---

[6] A comparison to other cases that have denied motions to dismiss demonstrates the deficiencies in the plaintiffs' allegations against Guo. *See, e.g., Jianjun Chen*, 2017 WL 2600051, at *4 (finding that plaintiffs adequately alleged individual defendant was their "employer," where complaint alleged, among other things, that defendant made hiring decisions, "made regular weekly visits to the [business]," provided direction on how to manage and discipline workers, "dispatched [plaintiffs] to deliver customer orders," and "scheduled them to distribute flyers"); *Stewart v. Hudson Hall LLC*, No. 20-CV-885, 2020 WL 8732875, at *8-*9 (S.D.N.Y. Oct. 19, 2020) (holding that plaintiffs sufficiently pled an individual was an FLSA employer where, in addition to alleging that defendant had hiring, firing and supervisory powers, also alleged "specific examples of [defendant's] exercise of control over employees"), *report and recommendation adopted*, 2021 WL 735244 (S.D.N.Y. Feb. 24, 2021).

While the *Carter* factors are not a "rigid four-part test" that must be met for a defendant to qualify as an employer, *Zheng*, 355 F.3d at 69, the plaintiffs have not satisfied the other economic reality tests, either. Indeed, the complaint does not plead any facts specific to Guo relating to the functional control test in *Zheng*, or to the independent-contractor inquiry in *Brock*, which "effectively disables the Court from applying" the factors described as relevant in those tests. *Han Dynasty, Inc.*, 2019 WL 633355, at *8. The plaintiffs respond in their opposition that "Kevin Guo required [plaintiffs] and their coworkers to purchase LaserShip uniforms at their own expense," and "demanded Plaintiffs to give him a $100 deposit before starting work." (ECF No. 34 at 15 (citing ECF No. 1 ¶¶ 50, 81, 134, 47, 79, 105, 132).)[7] The plaintiffs claim that these allegations show that "defendants controlled the extent and conditions of Plaintiff and his co-workers' employment" (*id.*), which they argue supports the first *Brock* factor. *See Brock*, 840 F. 2d at 1058 (describing "the degree of control exercised by the employer over the workers" as one relevant factor for determining whether individuals are employees covered by the FLSA).

Even if these statements established control, they do not reflect what is actually alleged in the complaint. The paragraphs that discuss the uniform and the $100 deposit do not mention Guo; rather, they refer to "the employer" and to the "Defendants," collectively. (*See, e.g.*, ECF No. 1 ¶ 39 ("To begin work for Defendants, Plaintiff [] had to give a $100 deposit to the employer"); *id.* ¶ 42 ("Plaintiff [] also had to pay $15 for a piece of LaserShip uniform.").) The complaint does not specify who collected the deposit, who required them to buy uniforms or who was otherwise responsible for controlling the plaintiffs' work environment. The plaintiffs have

---

[7] Paragraphs 39, 42, 59, 62, 75, 90 and 93 of the complaint contain allegations relating to the uniform and the $100 deposit. The paragraphs that the plaintiffs cite in their opposition brief do not contain these allegations.

thus failed to allege an employer-employee relationship with Guo, and the claims against him are dismissed.

## II. AA Forest

The allegations against AA Forest are similarly inadequate. The plaintiffs allege that AA Forest, a New York corporation, and LaserShip, are "joint employers" based on the theory that they are a single "enterprise" under the FLSA. (ECF No. 1 ¶¶ 11, 24.) The plaintiffs say that AA Forest and LaserShip shared staff, paid the plaintiffs regardless of where they performed their work, advertised themselves as an enterprise, and "are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same partners." (ECF No. 1 ¶¶ 11, 24.) They further allege that AA Forest "delivered exclusively" for LaserShip, who in turn "exclusively delivered Amazon Prime packages" (*id.* ¶ 26), and that "the work performed by Plaintiffs was directly essential to the business operated" by AA Forest and LaserShip. (*Id.* ¶ 27.)

These allegations do not plausibly establish that AA Forest and LaserShip jointly employed the plaintiffs under a single enterprise theory. Although sharing employees is a fact courts consider in determining whether there is a single enterprise, *see Khereed v. W. 12th St. Rest. Grp. LLC*, No. 15-CV-1363, 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016), the plaintiffs do not identify any other "shared" staff except themselves. They do not make any other plausible allegations, except in conclusory fashion, that would allow me to infer a single enterprise between AA Forest and LaserShip. The allegations that the two defendants held themselves out as an enterprise, as well as share ownership and a common business purpose are conclusory, and thus insufficient. *See Apolinar v. R.J. 49 REST., LLC*, No. 15-CV-8655, 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (dismissing claim premised on single enterprise

theory it "rel[ied] on a number of conclusory allegations that merely plead the presence of the relevant factors necessary to establish common control and joint employer status"); *Lopez v. Acme Am. Envtl. Co.*, No. 12-CV-511, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) ("Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees.").

In any event, the complaint does not provide an adequate factual basis to infer that AA Forest exercised control over the plaintiffs. *See Han Dynasty, Inc.*, 2019 WL 633355, at *8 ("Courts will dismiss a complaint against defendants within a broader alleged enterprise that lack a nexus suggesting control of the plaintiff at hand."). While the plaintiffs allege facts about their individual delivery schedules and how they began each day at "the company warehouse," which they say was operated by "Defendant," they do not identify which "Defendant" or "company" operated the warehouse. (ECF No. 1 ¶¶ 12, 43, 63, 77, 94.) The complaint states that a few named plaintiffs were "employed by Defendants to work as a LaserShip deliveryman" (ECF No. 1 ¶¶ 38, 58, 89), but this is a "legal conclusion couched as a factual allegation," and thus not entitled any weight. *Iqbal*, 556 U.S. at 678. The plaintiffs do not make any factual allegations about who supervised them, set their delivery schedules, controlled their work conditions or other facts bearing on their relationship with AA Forest. Although "[e]mployer status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control," *Irizarry*, 722 F.3d at 110, the complaint contains barely any non-conclusory factual detail that would allow me to evaluate the extent of AA Forest's control, whether formal or functional. *See Weng v. HungryPanda US, Inc.*, No. 19-CV-11882, 2022 WL 292799, at *5 (S.D.N.Y. Jan. 31, 2022) (dismissing claims against corporate defendant where complaint's

limited information precluded court from "analyzing Plaintiff's relationship with [defendant]" (internal quotation marks and citation omitted)); *Stewart*, 2020 WL 8732875, at *6 (same).

Finally, the plaintiffs maintain that they were AA Forest's employees under the *Brock* test (ECF No. 34 at 10, 11-12), which is used to decide whether "as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Brock*, 840 F.2d at 1058. The plaintiffs say they "depend upon Defendant's business for the opportunity to render service, as they had to get packages from Defendant's warehouse in order to carry out their job duties." (*Id.* at 12.) Seeking to show that the defendants controlled their work conditions, the plaintiffs point to allegations saying they were required to bear the cost of a delivery vehicle, gasoline, a $30 systems fee, and that Kevin Guo required them to make additional payments.[8] (*Id.*)

The plaintiffs' arguments are difficult to follow and, in any event, unpersuasive. As explained above, the complaint contains little detail that is specific to AA Forest, and the generic references to the "defendants," "effectively disable[s]" the Court from gauging the degree of control it exercised. *Han Dynasty, Inc.*, 2019 WL 633355, at *8. The plaintiffs do not attempt to argue how they satisfy other factors of the *Brock* test (ECF No. 34 at 12), which treats as material "the degree of skill and independent initiative required to perform the work," "the permanence or duration of the working relationship," and "the extent to which the work is an integral part of the employer's business." *Brock*, 840 F.2d at 1059. Although the allegation that the plaintiffs' work was "directly essential" to the defendants relates to the "extent to which the work is an integral part of the employer's business," the plaintiffs include no factual content at

---

[8] As explained earlier, the plaintiffs' arguments about Guo misstate what is alleged in the complaint.

all. The Court cannot conclude that the plaintiffs have pled the existence of an employer-employee relationship with AA Forest based on this record.

Accordingly, the plaintiffs do not plausibly allege that AA Forest was part of a single enterprise with LaserShip, or that it maintained either formal or functional control over the plaintiffs' employment.

## III. Brett Bissell

Nor do the plaintiffs adequately allege that Bissell was their employer. Indeed, the complaint makes even fewer allegations against Bissell than it makes against Guo. The plaintiffs repeat the same boilerplate allegation, claiming that Bissell "as Owner . . . and CEO of [LaserShip], (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at [LaserShip]." (ECF No. 1 ¶ 22.) As explained in connection with Guo, these allegations are insufficient because they summarily recite the *Carter* factors without any factual support, and because a defendant's managerial or executive role at a company, without more, does not make him an employer under FLSA. *See Chen Lin*, 2021 WL 681075, at *8; *Han Dynasty, Inc.*, 2019 WL 633355, at *7.

Because the complaint makes no additional allegations against Bissell, it does not plausibly establish that he was their employer within the meaning of the FLSA.

## IV. LaserShip

The allegations against LaserShip are also deficient. The plaintiffs allege that LaserShip, a New York corporation with a Virginia address, is part of a single enterprise with AA Forest because they share staff, ownership, operations and a common business purpose. (ECF No. 1 ¶¶

13, 24.) With the exception of Changli Gao,[9] each plaintiff alleges that he was "employed by Defendants to work as a LaserShip deliveryman," and was required to buy a "LaserShip uniform." (*Id.* ¶¶ 38, 42, 58, 62, 89, 93.)

For reasons explained above, the plaintiffs' allegations of a single integrated enterprise between AA Forest and LaserShip are too thin and conclusory to allow the Court to infer that one exists at this stage. Similarly, the plaintiffs have not met their pleading burden in showing, as they try to argue in their opposition brief, that LaserShip and AA Forest, as "joint employers . . . exercised formal control and functional control over Plaintiffs." (ECF No. 34 at 16-19.)

The plaintiffs do not allege any facts showing that LaserShip exercised formal control over them. While the complaint asserts that the plaintiffs were "employed by Defendants to work as [] LaserShip delivery[e]n" (ECF No. 1 ¶¶ 38, 58, 89), it does not include any details to support that allegation, much less any other facts specific to LaserShip that are relevant to the formal control factors described in *Carter*.

Instead, the plaintiffs focus on the functional control factors in *Zheng* (ECF No. 34 at 19-22), but these arguments are not persuasive. For example, in an effort to show that AA Forest and LaserShip exercised control, they refer in their brief to a "navigation system" that LaserShip allegedly developed and was installed on their phones to track their location as they made deliveries. (ECF No. 34 at 21.) But this detail is not included in the complaint,[10] and the Court may not consider these extra-pleading allegations on a Rule 12(b)(6) motion. *See Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 405 (E.D.N.Y. 2010), *modified* (July 2, 2010). Second,

---

[9] Unlike the others, Gao alleges that he was "employed by Defendants to work as a deliveryman at 16 Stoner Ave, Apt. 3 Great Neck, NY 11021," which, according to the complaint, is AA Forest's address. (ECF No. 1 ¶ 11, 74.)

[10] This detail is included in the affidavits that the plaintiffs attach to their brief. (ECF No. 35 at 2-3; ECF No. 36 at 3; ECF No. 37 at 4; ECF No. 38 at 4.)

they assert that they "relied on the warehouse operated by Defendants," because they had to "pick up packages from the warehouse on each workday in order to carry out their job duties." (ECF No. 34 at 21.) As discussed earlier, allegations about the warehouse operations refer to the "Defendants," collectively—without distinguishing between AA Forest and LaserShip—and are thus too vague to support a finding that LaserShip exercised control over the plaintiffs' employment and their delivery schedules. Third, the plaintiffs point to their cursory allegation that their work was "directly essential" to the defendants (ECF No. 1 ¶ 27), but do not explain how this is relevant to any of the *Zheng* factors. (ECF No. 34 at 21.) Finally, the plaintiffs say that they "worked exclusively or predominantly for Defendants" (*id.*), which merely parrots the sixth *Zheng* factor, and in any event, is an allegation that does not appear in the complaint. *Zheng*, 355 F.3d at 72 (describing "whether plaintiffs worked exclusively or predominantly for the [defendants]" as one factor in functional control analysis); (ECF No. 1 ¶ 26.)

Because the plaintiffs have not pled facts plausibly establishing that LaserShip was their employer—under a single enterprise theory or under the control tests in *Carter* and *Zheng*—the claims against LaserShip are dismissed.

## V.     Leave to Amend

While Rule 15(a) provides that leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Leave is typically granted absent "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371

U.S. 178, 182 (1962)). A motion to amend a complaint under Rule 15(a) must set forth the substance of the proposed amendment, and the grounds supporting the application. *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004); *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 351 (S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012).

In letters seeking a pre-motion conference, the defendants made essentially the same arguments they raise in support of their motions to dismiss. (ECF Nos. 23, 26.) At the pre-motion conference, I raised concerns about the sufficiency of the plaintiffs' allegations, and asked counsel whether there was a way to amend the complaint. (*See* ECF Nos. 23, 26; Apr. 20, 2021 Pre-Motion Conf. Tr. 6:22-7:3, 7:17-8:6, ECF No. 39-1.) The plaintiffs did not amend the complaint. The fact that the plaintiffs were alerted to deficiencies in their pleading and given an opportunity to fix them weighs against the plaintiffs' request to amend. *See Brown v. Cerberus Cap. Mgmt., L.P.*, 703 F. App'x 11, 15 (2d Cir. 2017) (summary order) (no abuse of discretion in denying leave to amend where "Plaintiffs enjoyed a full opportunity to amend, having been apprised of Defendants' views of the original complaint's shortcomings").

The plaintiffs now seek leave to amend the complaint in the event that the "Court finds that the Complaint does not sufficiently allege an employer-employee relationship[.]" (ECF No. 34 at 15-16.) The plaintiffs attach four affidavits from the named plaintiffs, which provide some additional information about their work. (ECF Nos. 35-38.) According to the plaintiffs, these allegations demonstrate that "defendants exercised a high degree of control over the employment of Plaintiffs and their co-workers." (ECF No. 34 at 15.) Although the plaintiffs' request is accompanied by some new information about their interactions with Kevin Guo and an application by LaserShip that was installed on their phones, they do not submit a proposed amended complaint, let alone adequately explain how their new allegations would lead to a

different result. (*Id.* at 15-16); *Horoshko*, 373 F.3d at 249 ("[A]mendment is not warranted absent some indication as to what appellants might add to their complaint in order to make it viable." (internal quotation marks, alteration and citation omitted)); *Chen Lin*, 2021 WL 681075, at *9 (denying leave to amend without prejudice where "plaintiffs have not explained how a second amended complaint would cure their deficiencies in pleading").

Accordingly, the plaintiffs' request for leave to amend the complaint is denied without prejudice. Any motion to amend pursuant to Rule 15(a) must be filed within 30 days of this order, and it must set forth the substance of the proposed amended complaint, and the grounds supporting the application.

## CONCLUSION

For these reasons, the defendants' motions to dismiss for failure to state a claim are granted. The plaintiffs' request for leave to amend the complaint is denied without prejudice.

**SO ORDERED.**

                                                    s/Ann M. Donnelly
                                                  ANN M. DONNELLY
                                                  United States District Judge

Dated: Brooklyn, New York
         March 28, 2022