UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

QUNBIN YUAN, JIAN KANG LIU, a/k/a James Liu,:
CHANGLI KAO, a/k/a Charlie Gao, and MING:
XIANG, *on their own behalf and on behalf of others*:
*similarly situated,*                            :

:                    MEMORANDUM &
:                    ORDER

                            Plaintiffs,        :

:                    20-CV-5484 (AMD)(MMH)

            -against-                          :

:

AA FOREST INC. d/b/a Lasership, YOU LIANG GUO:
a/k/a Youliang Guo, and PENG YANG GUO a/k/a:
Pengyang Guo a/k/a Kevin Guo,                  :

:

                            Defendants.        :

------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Qunbin Yuan, Jian Kang Liu a/k/a James Liu, and Changli Gao a/k/a Charlie Gao, and Ming Xiang sued, individually and on behalf of other persons similarly situated, Defendants AA Forest Inc. d/b/a Lasership ("AA Forest") and others, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.*, and related regulations. (*See generally* Compl., ECF No. 1.) After amendments to withdraw claims and add parties, the operative Second Amended Complaint ("SAC") asserts claims against AA Forest, You Liang Guo a/k/a Kevin Guo, and Peng Yang Guo a/k/a Pengyang Guo a/k/a Kevin Guo. (*See generally* 2d Am. Compl., ECF No. 95.)[1] Before the Court is Plaintiffs' motion for: (1) conditional certification of an FLSA collective action pursuant to 29 U.S.C. § 216(b); (2)

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

Court-authorized notice to the putative opt-in plaintiffs; (3) pre-certification discovery in anticipated of a class action under Fed. R. Civ. P. 23; and (4) leave to amend the Amended Complaint, if necessary, for opt-in plaintiffs' NYLL claims, which Defendants oppose in part. (*See generally* Pls.' Mot., ECF No. 97; Defs' Mem., ECF No. 101.)[2]  For the reasons set forth below, Plaintiffs' motion is **granted in part and denied in part**.

## I.    <u>BACKGROUND</u>

### A.    Facts

The following asserted facts are taken from the SAC and the declarations and exhibits submitted in support of Plaintiffs' motion.

AA Forest is a domestic business corporation located in Great Neck, New York that operates a warehouse at 57-47 47th Street, Queens, New York.  (2d Am. Compl., ECF No. 95 ¶¶ 15–16.)  You Liang is the owner of AA Forest and the signatory of checks issued by AA Forest, who operated AA Forest as his alter ego.  (*Id.* ¶¶ 23–25.)  Peng Yang is You Liang's son and the manager at AA Forest, who educated Plaintiffs about their job responsibilities and had the authority to hire, discipline, and terminate deliverymen.  (*Id.* ¶¶ 27–28, 31–32.)

Yuan worked as a Lasership deliveryman delivering Amazon Prime goods in Brooklyn, New York from on or about July 8, 2020 to July 13, 2020.  (*Id.* ¶ 60.)  Yuan further alleges that while employed by AA Forest, he worked 67.33 hours in total for the following days: 10.5 hours on July 8, 2020; 11.4 hours on July 9, 2020 and July 10, 2020, respectively; 9.5 hours

---

[2] Plaintiffs' motion papers include a notice of motion (Pls.' Mot., ECF No. 97); the declaration of John Troy, Esq., (Troy Decl., ECF No. 98) and his eleven supporting exhibits (Troy Decl. Exs. 1–11, ECF Nos. 98-1 through 98-11); a memorandum of law (Pls.' Mem., ECF No. 99); and a reply brief (Pls.' Reply, ECF No. 104.)  Defendants' opposition includes only a memorandum of law in opposition to Plaintiffs' motion.  (Defs.' Mem., ECF No. 101.)

on July 11, 2020; 11 hours on July 12, 2020; and 13.5 hours on July 13, 2020.  (*Id*. ¶ 67.)  Yuan alleges that he was paid at a daily rate of $80 by Peng Yang although Peng Yang promised him $200 per day.  (*Id*. ¶ 71.)  On July 8, 2020, Yuan received only a half-rate.  (*Id*. ¶ 72.)  During his entire employment, Yuan was paid $380 in total in two checks.  (*Id*. ¶ 74.)

Liu worked for Defendants as a Lasership deliveryman delivering Amazon Prime goods within the Brooklyn, New York area from on or about July 15, 2020 to July 17, 2020.  (*Id*. ¶¶ 92–93.)  Liu alleges that during his employment, he worked 33.6 hours in total for the following days: 7.5 hours on July 15, 2020; 9.25 hours on July 16, 2020; and 9.33 hours on July 17, 2020.[3]  (*Id*. ¶ 99.)  Liu further alleges that he was paid at a daily rate of $80 and $40 on his first day.  (*Id*. ¶¶ 102–103.)

Kao worked for Defendants as a deliveryman delivering goods within the Brooklyn, New York area from on or about July 11, 2020 to July 17, 2020.  (*Id*. ¶¶ 121–122.)  Kao alleges that during his employment, he worked 73.5 hours in total for the following days: 9 hours on July 11, 2020; 10.5 hours on July 12, 2020; 10.5 hours on July 13, 2020; 10.5 hours on July 14, 2020; 11.5 hours on July 15, 2020; 12.5 hours on July 16, 2020; and 9 hours on July 17, 2020.  (*Id*. ¶ 126.)  Kao further alleges that he was paid at a daily rate of $75 and $35 on his first day.  (*Id*. ¶ 128.)  He received two checks totaling $490.  (*Id*. ¶ 129.)

Xiang worked for Defendants as a Lasership deliveryman delivering Amazon Prime goods within the Brooklyn, New York area from on or about July 9, 2020 to July 13, 2020.  (*Id*. ¶¶ 148–149.)  Xiang alleges that during his employment, he worked 55.75 hours in total

---

[3] The sum of Liu's work hours for July 15, 2020 to July 17, 2020 is 26.08 hours, not 33.60 hours as alleged.

for the following days: 10 hours on July 9, 2020; 11.75 hours on July 10, 2020; 10.5 hours on July 11, 2020; 12 hours on July 12, 2020; and 11.5 hours on July 13, 2020.  (*Id.* ¶ 157.)  Xiang further alleges that he was paid at a daily rate of $80 and $40 on his first day.  (*Id.* ¶¶ 162–163.)

Plaintiffs allege that they were not exempt under federal and state laws requiring employers to pay employees overtime.  (*Id.* ¶ 54.)  Plaintiffs allege that they were not provided with wage notice or statements and that Defendants did not pay the applicable minimum wages, or any overtime wages for hours worked above forty hours per week, or spread of hours premiums.  (*Id.* ¶¶ 58, 114–116, 197, 201, 218, 223.)  They were not reimbursed by Defendants for the cost of purchasing their motor vehicle or gasoline.  (*Id.* ¶¶ 81, 110, 136, 172.)  Plaintiffs also allege that at least forty similarly situated former and current employees were subject to the same policies and procedures.  (*Id.* ¶ 188.)  Specifically, Plaintiffs indicate at least six other similarly situated employees whom they believe, based on their personal knowledge and observations, also worked in excess of forty hours per week and were not paid the requisite overtime wages.  (Yuan Decl., ECF No. 98-9 ¶¶ 33–51; Kao Decl., ECF No. 98-10 ¶¶ 15–38; Liu Decl., ECF No. 98-11 ¶¶ 24–33.)  These employees worked or continue to work as delivery drivers.  (*Id.*)  Finally, Plaintiffs allege that Defendants knew but disregarded the provisions of the FLSA by failing to compensate Plaintiffs at the statutory minimum wage and that Defendants ignored their duty to provide wage notices and adequately pay their employees' spread of hours wages.  (2d Am. Compl., ECF No. 95 ¶¶ 53, 57–58, 197.)

## B.    Procedural History

Plaintiffs initiated this action on November 15, 2020.  (Compl., ECF No. 1.)  On January 4, 2023, Plaintiffs amended the Complaint to remove LaserShip, Inc. from this action.

(1st Am. Compl. ECF No. 56.)  Defendants answered the Amended Complaint on January 20, 2023, asserting a counterclaim against all Plaintiffs.  (Answer, ECF No. 58.)  In May 2023, the Court granted Plaintiffs' motion to dismiss Defendants' counterclaims.  (*See* ECF No. 65.)  In August 2023, Plaintiffs moved to certify an FLSA collective action.  (1st Mot., ECF No. 69.)  After Plaintiffs filed the first motion, the Court extended the parties' deadline to complete discovery several times.  (Dec. 13, 2023 Order; Feb. 14, 2024 Order.)  The Court denied Plaintiffs' first motion to certify an FLSA collective action because Plaintiffs' motion to amend the First Amended Complaint was pending.  (Mar. 18, 2024 Order.)  In July 2024, the Court granted Plaintiffs leave to amend the Amended Complaint to include the actual name of Kevin Guo as Peng Yang Guo.  (2d Am. Compl., ECF No. 95; Troy Decl., ECF No. 86 ¶¶ 2–3; July 2, 2024 Order.)   In October 2024, Defendants answered the SAC and asserted two counterclaims.  (Answer to 2d Am. Compl., ECF No. 100.)

On September 16, 2024, Plaintiffs filed the instant motion for conditional certification as a collective action.  (Pls.' Mot., ECF No. 97.)  Specifically, Plaintiffs argue that similarly situated employees should be afforded notice of the lawsuit and provided with an opportunity to opt-in because Plaintiffs have met their burden to show that non-managerial employees were subject to a common policy that violated the FLSA.  (Pls.' Mem., ECF No. 99 at 8–16.)  Plaintiffs further request the Court: (1) order Defendants to provide the names and contact information of those non-managerial employees; (2) approve the proposed notices of the lawsuit and allow for their dissemination through various means; (3) authorize a 90-day opt-in period and three-year statute of limitations and notice period; (4) toll the statute of limitations for opt-in plaintiffs; (5) authorize pre-class certification discovery of putative class members; and (6) grant Plaintiffs leave to file an amended complaint.  (*Id.* at 14–21.)

Defendants opposed on October 25, 2024, arguing that Plaintiffs fail to meet their evidentiary burden that Defendants' employees are similarly situated and were subject to a common policy that violated the FLSA and that there are similarly situated non-exempt employees who desire to opt in.  (Defs.' Mem., ECF No. 101 at 6–11.)  Defendants also object to Plaintiffs' proposed notices, the proposed opt-in and notice period, and to tolling the statute of limitations.  (*Id.* at 13–17.)  In their reply on November 22, 2024, Plaintiffs repeated their arguments in support of the instant motion.  (*See generally* Pls.' Reply, ECF No. 104.)  The parties presented oral argument at a hearing on December 16, 2024 and the Court reserved decision.  (Dec. 16, 2024 Min. Entry.)

## II.    <u>LEGAL STANDARD</u>

"The FLSA permits employees to create a collective by opting-in to a backpay claim brought by a similarly situated employee."  *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citing 29 U.S.C. § 216(b)).  "A collective action under the FLSA differs from the typical class action under Rule 23 because 'a party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation.'"  *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH)(MMH), 2021 WL 4502479, at *2 (E.D.N.Y. Sept. 30, 2021) (quoting *Ahmed v. T.J. Maxx Corp.*, No. 10-CV-3609 (ADS)(ETB), 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013)).  Additionally, unlike a Rule 23 class, members of an FLSA collective action must affirmatively "opt in" to the action.  *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("Under the FLSA[,] 'conditional certification' does not produce a class with an independent legal status, or join

additional parties to the action.  The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . .") (internal citations omitted).

Although not expressly mandated under the FLSA, courts in the Second Circuit apply a two-step process when analyzing the proposed certification of a collective action.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010) ("[T]he district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible.").  The first step, termed "conditional certification," at issue here, "generally takes place before any significant discovery."  *Wilk v. Quality Installations of NY, Inc.*, 724 F. Supp. 3d 76, 84 (E.D.N.Y. 2024) (quoting *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014)).  As such, conditional certification imposes merely a "minimal burden" on the plaintiff and is satisfied by a showing that the purported class members are "similarly situated."  *Wilk*, 724 F. Supp. 3d at 84.  This analysis requires a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  *Myers*, 624 F.3d at 555 (internal quotation marks omitted).  The second step of the collective action occurs on a more complete record where plaintiffs are required to show that the opt-in plaintiffs are, in fact, similarly situated.  *Lopez v. Robbins*, No. 23-CV-807 (LDH)(JMW), 2024 WL 4242142, at *5 (E.D.N.Y. Sept. 19, 2024) (citing *Myers*, 624 F.3d at 555).  If the court determines that the opt-in plaintiffs are not in fact similarly situated, the class is decertified, and the opt-in plaintiffs' claims are dismissed without prejudice.  *Aleman-Valdivia*, 2021 WL 4502479, at *2 (citations omitted).

While this initial step of collective action certification imposes a relatively low burden, a plaintiff may not use unsupported assertions to prove their claims.  *Wang v. Kirin Transp.*

*Inc.*, No. 20-CV-5410 (KAM)(TAM), 2022 WL 79155, at *3 (E.D.N.Y. Jan. 7, 2022) (citing *Myers*, 624 F.3d at 555). "However, '[a] named plaintiff is not required to show an actual FLSA violation at this stage, but rather only that a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs.'" *Ding v. Mask Pot Inc.*, 347 F.R.D. 417, 427 (E.D.N.Y. 2024) (quoting *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012)) (cleaned up). "In making this showing, nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required." *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016) (cleaned up).

Once the conditional certification is approved, "district courts may order that notice be given to potential members of a collective." *Singh v. Anmol Food Mart, Inc.*, No. 22-CV-5475 (RER)(JAM), 2024 WL 308241, at *3 (E.D.N.Y. Jan. 26, 2024). "Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Aleman-Valdivia*, 2021 WL 4502479, at *8 (cleaned up).

## III.  DISCUSSION

### A.    Conditional Certification

Plaintiffs have met their minimal burden of showing that deliverymen employed by AA Forest—and only deliverymen—are similarly situated for the purposes of conditional certification. *Lopez,* 2024 WL 4242142, at *5. Plaintiffs assert a potential FLSA collective consisting of "all current and former non-exempt and non-managerial employees employed at any time from November 15, 2017" to present. (Troy Decl., ECF No. 98 ¶ 2.) Yuan, Kao,

and Liu provide the basic work information about at least six other delivery drivers whom they assert were subject to the same work schedule and at least two of them were paid according to the number of delivered packages, instead of receiving overtime pay for hours worked in excess of forty hours per week.  (Yuan Decl., ECF No. 98-9 ¶¶ 33–51; Kao Decl., ECF No. 98-10 ¶¶ 15–38; Liu Decl. ECF No. 98-11 ¶¶ 24–33.)  Plaintiffs' knowledge of these other employees and their experiences is based on their observations and conversations with several other employees at the same warehouse.  (*Id.*)

With respect to any other nonexempt and nonmanagerial employees, however, the Court agrees with Defendants that Plaintiffs fail to meet their burden.  (Defs.' Mem., ECF No. 101 at 6.)  While "prospective class members need not have the exact same duties, titles, or jobs to be similarly situated for the purposes of conditional certification of a class," *Ding*, 347 F.R.D. at 428 (citing *Cabrera v. Stephens*, No. 16-CV-3234 (ADS)(SIL), 2017 WL 4326511, at *5 (E.D.N.Y. Sept. 28, 2017)), "[t]he materials provided by [Plaintiffs] in support of their motion for conditional certification only include affidavits from several delivery persons . . . and thus any allegations with respect to employees in other positions are conclusory and unsupported."  *Cheng Xia Wang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-840 (VSB), 2018 WL 3155835, at *5 (S.D.N.Y. June 28, 2018) (collecting cases).  The Court therefore declines to include other categories of nonexempt, nonmanagerial workers in the putative collective.

Defendants also argue that (1) the names of the purported coworkers are boilerplate, that (2) Plaintiffs' allegations based on their observation without disclosing the basis of their knowledge are not sufficient or hearsay statements, and that (3) Plaintiffs have failed to demonstrate a reasonable basis for their claim that there are other similarly situated employees.

(Defs.' Mem., ECF No. 101 at 6–11.)   But "no case has 'ever explicitly required plaintiffs to identify similarly situated employees by name to obtain conditional certification.'"   *Ling Chen v. Asian Terrace Rest., Inc.*, No. 19-CV-7313 (BMC), 2020 WL 4041133, at *4 (E.D.N.Y. July 17, 2020) (quoting *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012)).   Courts also have rejected similar arguments about the inadequacy of a plaintiff's factual allegations.   *See, e.g.*, *Aleman-Valdivia*, 2021 WL 4502479, at *4; *Cabrera*, 2017 WL 4326511, at *6.   In fact, to determine whether a collective action can be conditionally certified, courts may authorize notice based solely on one plaintiff's affidavit. *McPherson v. Look Ent. Ltd.*, No. 23-CV-4273 (JMA)(JMW), 2024 WL 4265844, at *5 (E.D.N.Y. Sept. 23, 2024) (collecting cases); *see also Zaldivar*, 166 F. Supp. 3d at 318 ("[C]ourts have routinely found that the allegations in the pleadings and the personal observations of one plaintiff's affidavit are sufficient to make the modest factual showing necessary to conditionally certify a class.") (internal citation and quotation marks omitted).   In sum, "[b]ased on the experience of the [Plaintiffs], who are all delivery persons, '[t]he Court can fairly infer that other deliverymen worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA and NYLL.'"   *Cheng Xia Wang*, 2018 WL 3155835, at *4 (citing *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3964 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014)).   Plaintiffs' evidentiary showing is more than sufficient, and Defendants offer no persuasive authority to rebut this conclusion.

Accordingly, Plaintiffs have satisfied the minimal burden at the first step of this FLSA collective action and have made a "modest factual showing" to demonstrate that they are similarly situated with the potential collective opt-in plaintiffs. *Lopez,* 2024 WL 4242142, at *5; *McPherson,* 2024 WL 4265844, at *5.   The Court therefore grants conditional certification

to a collective action consisting of all or substantially non-exempt and non-managerial current and former employees of Defendants, who performed work as deliverymen at AA Forest's warehouse located at 57-47 47th Street, Queens, New York during the time period discussed below.

In reaching its conclusion, the Court does not find that Plaintiffs will necessarily prevail on the merits of their claims because the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist. *Aleman-Valdivia*, 2021 WL 4502479, at *5. Any factual rebuttals to Plaintiffs' assertions can be further developed through discovery. *Yi Mei Ke v. JR Sushi 2 Inc.,* No. 19-CV-7332 (PAE) (BCM), 2021 WL 148751, at *2 (S.D.N.Y. Jan. 15, 2021), *aff'd sub nom. Ke v. JR Sushi 2 Inc.,* No. 19-CV-7332 (PAE)(BCM)*,* 2021 WL 465359 (S.D.N.Y. Feb. 9, 2021) ("The accuracy of the parties' competing views will be tested through discovery and may be raised before the Court on a motion to decertify the class after the close of discovery.").

### B.    Equitable Tolling

Plaintiffs argue that the statute of limitations for their FLSA claims should be equitably tolled for the period when their first and second motions for collective action certification were pending. (*See* Pls.' Mem., ECF No. 99 at 19–20; Pls.' Reply, ECF No. 104 at 13–14.) Defendants counter that the Court should not consider any tolling because Plaintiffs do not argue that they have pursued their claims diligently or show that their case is different from a regular FLSA collective action. (Defs.' Mem., ECF No. 101 at 16–17.)

For an FLSA action, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Garriga v. Blonder Builders Inc.*, No  CV-17-497 (JMA)(AKT), 2018 WL 4861394, at *10

(E.D.N.Y. Sept. 28, 2018) (citing 29 U.S.C. § 256(b)).  "'[E]quitable tolling [of the statute of limitations] is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights.'"  *Singh*, 2024 WL 308241, at *3 (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003)).  However, "courts in this Circuit have permitted equitable tolling while the motion for conditional certification is before the court."  *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491 (WFK)(VMS), 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015) (cleaned up); *see also Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091 (SJF)(AKT), 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020) ("Given the length of time that has passed since the instant motion was filed, and the diligence of Plaintiff's counsel in pursuing certification, the Court is granting equitable tolling from the date the motion was filed.").

The Court grants equitable tolling for the time period between September 16, 2024, the filing of the second motion, and the date of this Memorandum and Order "to thus avoid attributing to the Potential Collective Action Members the Court's deliberation period."  *Fa Ting Wang*, 2015 WL 4603117, at *14.

### C.    Court-Authorized Notice

Plaintiffs also request the Court's approval of their proposed Court-Authorized Notice of Collective Action and accompanying Plaintiff Consent to Join form (together, the "Notice of Lawsuit"), a shorter text and email message ("the Notice Text Message"), and a postcard, email, and text reminder notice (the "Reminder Notices") (collectively, the "Notices") to the potential plaintiffs.  (Pls.' Mem., ECF No. 99 at 15–19; Troy Decl. Ex 2., ECF No. 98-2; *id.* Exs. 4–8, ECF Nos. 98-4 through 98-8.)  Specifically, Plaintiffs request that the Court approve:

(1) the substance and form of the Notices; and (2) several methods of dissemination of the Notices including mail, email, text message, social media messenger platforms, two Quick Response codes ("the QR codes"), posters, and newspaper publication. (Pls.' Mem., ECF No. 99 at 15–19.) They also seek expedited discovery of the contact information of the putative collective action plaintiffs. (*Id.* at 14–15.)

Defendants object to the length of the opt-in period and Plaintiff's proposed three-year statute of limitations, and further request that Plaintiffs provide a copy of the Chinese and Spanish translation of the proposed Notices. (Defs.' Mem., ECF No. 101 at 13–16.) Defendants further object to Plaintiffs' request for the contact information about potential opt-in plaintiffs. (Tr., ECF No. 105 at 23:10–20.)

The form and substance of the proposed court-authorized notice of a collective action are left to the broad discretion of the district court. *Gurrieri v. Cnty. of Nassau*, No. 16-CV-6983 (ADS)(SIL), 2019 WL 2233830, at *10 (E.D.N.Y. May 23, 2019) (citations omitted). The notices generally include "'a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.'" *Yi Mei Ke,* 2021 WL 148751 at *12 (quoting *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012)).

The Court exercises its discretion to grant Plaintiffs' request to circulate and post the Notices, subject to the modifications and rulings set forth below.

### 1.    Notice Period

Plaintiffs request that Notices should be sent to all similarly situated non-exempt employees who worked for Defendants during a three-year period prior to the date Plaintiffs filed the Complaint (*i.e.*, starting from November 15, 2017) because they assert Defendants' willful violation of the FLSA.  (Pls.' Mem., ECF No. 99 at 18.)  Defendants do not oppose the three-year notice period.

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'"  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)).  "'Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action.'"  *Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, No. 21-CV-1263 (BMC), 2021 WL 4750098, at *4 (E.D.N.Y. Oct. 12, 2021) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013)).

The Court concludes that a three-year notice period is appropriate because "Plaintiffs have proffered facts sufficient to support an inference [of] willfulness."  *Garriga* , 2018 WL 4861394, at *6 (citing *Calderon*, 892 F. Supp. 2d at 462 ("The allegations contained in plaintiffs' [c]omplaint concerning defendants' failure to provide their employees with proper overtime compensation are sufficient at this preliminary stage to warrant authorizing notice for a three-year period.")).  In the SAC, Plaintiffs allege that they worked more than 40 hours a week but were not paid the requisite overtime pay for any hours worked above 40 hours a week, and that Defendants ignored their duty to adequately pay their employees' overtime wages.  (2d Am. Compl., ECF No. 95 ¶¶ 53, 78, 107, 133, 169.)  Consistent with other cases, the Court finds that the notice period should begin on the date of the filing of the Complaint

because "collective action members should not be prejudiced by the lapse of time and any delays caused by the timing of briefing and review of a certification motion." *Cinar v. R&G Brenner Income Tax LLC*, No. 20-CV-1362 (RPK)(JRC), 2021 WL 7366924, at *12 (E.D.N.Y. Sept. 29, 2021); *see also id.* ("[A] number of cases in this Circuit have found that at the conditional certification stage, the Court should err on the side of caution and set the time for notice using the date of the filing of the lawsuit.") (cleaned up); *see also Aleman-Valdivia*, 2021 WL 4502479, at * 6; *Zimnicki v. Krysiak Constr. Corp.*, No. 21-CV-04634 (RPK)(JRC), 2022 WL 17820139, at *10 (E.D.N.Y. Sept. 27, 2022).

Accordingly, Plaintiffs' Notices shall be disseminated to potential opt-in plaintiffs for the three-year period authorized for willful violations of the FLSA, commencing from November 15, 2017.

### 2.    Methods of Dissemination

Plaintiffs also seek to disseminate the proposed Notices "in Chinese and Spanish languages" (1) via regular mail; (2) via email; (3) by sending a message via SMS text message and messaging and social media applications (*i.e.*, WhatsApp and WeChat); (4) publication of QR codes; (5) posting on Plaintiffs' counsel's website; and (6) posting a hard copy at AA Forest's premises located at 57-47 47th Street, Queens, New York 11378.[4] (Pls.' Mem., ECF

---

[4] Plaintiffs request to disseminate the proposed notice by posting "at the defendant restaurants." (Pls.' Mem., ECF No. 99 at 17 (citing *Ling Chen v. Asian Terrace Rest., Inc.*, 2020 U.S. Dist. LEXIS 126417 at *15 (E.D.N.Y. July 17, 2020); *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020); *Varghese v. JP Morgan Chase & Co.*, 2016 U.S. Dist. LEXIS 122428 at *26 (S.D.N.Y. Sept. 9, 2016); *Tong Fu Kiang v. Yummy Oriental Rest., Inc.*, 2019 U.S. Dist. LEXIS 230326, at *10 (E.D.N.Y. July 1, 2019).) This appears to be a scrivener's error because Plaintiffs' application otherwise seeks to post the proposed notice at Defendants' warehouse in Queens. (*See, e.g.*, Troy Decl., Ex. 3, ECF No. 98-3 at 2–3.)

No. 99 at 15–17, 22–24, 26–27; Troy Decl. Ex. 3, ECF No. 98-3 at 2–3.)[5]  Defendants do not interpose objections.  (*See generally* Defs.' Mem., ECF No. 101.)

### a.    Notices in Chinese and Spanish[6]

Plaintiffs specifically request that any notices should be prepared in Chinese and Spanish because many potential opt-in plaintiffs are not native-English speakers and are from China or South America.  (Pls.' Mem., ECF No. 99 at 18.)  For the same reason, Plaintiffs further request that the Court authorize bilingual notices (*i.e.*, English/Chinese and English/Spanish) and consent forms in the same document.  (*Id*. at 19.)  Defendants object because Plaintiffs failed to provide the translated versions of the proposed Notices and request an opportunity to review the translations before publication.  (Defs.' Mem., ECF No. 101 at 13–14.)

'"Generally, courts permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs."'  *Aleman-Valdivia*, 2021 WL 4502479, at *7 n.12 (quoting *Chui*, 2020 WL 3618892, at *10).  The Court approves publication of the Notices in English, Chinese, and Spanish to effectuate the FLSA's remedial purpose of notifying putative collective action members about the litigation.  That said, the Court denies bilingual notices, which could be "so confusing that [they] may discourage a plaintiff from reading far enough to decide to join the action."  *Ding*, 347 F.R.D. at 431 (quoting *Panora v. Deenora Corp.*,

---

[5] WhatsApp and WeChat are services that allows users to send text messages and voice messages and make voice calls through a user's mobile device or desktop.  The service requires the use of an internet connection and cellphone number.

[6] Plaintiffs' proposed order requests the notice to be disseminated "in any relevant language."  (Troy Decl., Ex. 3, ECF No. 98-3 at 2.)  However, Plaintiffs' memorandum of law in support of their motion only requests the notices to be disseminated in Chinese and Spanish only.  As such, the Court only considers the languages of Chinese and Spanish.

521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021)).  Further, the Court grants Defendants' request to review the translated Notices before publication.

### b.    Social Media Applications

Plaintiffs argue that notices by mail, email, text, and direct social media channels are routinely approved in Courts within the Second Circuit and are reasonable and minimally invasive.  (Pls.' Mem., ECF No. 99 at 15.)  Defendants do not object to this aspect of Plaintiffs' request.  (*See generally* Defs.' Mem., ECF No. 101.)

"Courts have held that the dissemination of notices via mail, email, and text are appropriate vehicles."  *Chen v. Thai Greenleaf Rest. Corp.*, No. 21-CV-01382 (MKB)(JMW), 2024 WL 3742718, at *5 (E.D.N.Y. Aug. 9, 2024) (citing *Carranza v. VBFS, Inc.,* No. 20-CV-2635 (PAE)(KHP), 2021 WL 1233546, at *19 (S.D.N.Y. Apr. 2, 2021)).  Courts may also allow dissemination of FLSA notices via social media messaging when the plaintiff has provided a "justification to deviate from the traditional methods [of mail, email, and text message] generally accepted by courts sitting in this Circuit for disseminating notice to the putative collective members."  *Chui*, 2020 WL 3618892, at *10.

The Court agrees with Plaintiffs that the potential opt-ins' use of direct messaging applications justify notice via direct messages to each opt-in plaintiff via standard text messages, WeChat, and WhatsApp.  *See, e.g.*, *Aleman-Valdivia*, 2021 WL 4502479, at *11; *Chen v. Thai Greenleaf Rest.,* 2024 WL 3742718, at *6; *Panora*, 2020 WL 7246439, at *5 (allowing notice to be provided through "forms of direct communication with potential plaintiffs – including mail, e-mail, text message, and direct social media channels such as WhatsApp and WeChat").  Accordingly, the Court orders that, in addition to regular mail, the

notices shall be disseminated in direct messages to each opt-in plaintiff by email, SMS text message, WhatsApp, and WeChat.

### c.    QR Codes

Plaintiffs also request authorization for publication of QR codes to potential members to directly communicate with Plaintiffs' counsel and to submit the Notice of Pendency form electronically.  (Pls.' Mem., ECF No. 99 at 17.)

"This Circuit has been hesitant to allow QR codes for fear that recipients can scan and 'find themselves virtually in counsel's office.'"  *Chen v. Thai Greenleaf Rest.*, 2024 WL 3742718, at *6 (quoting *Singh*, 2024 WL 308241, at *5).  Plaintiffs argue that QR codes are reasonably and minimally invasive because they serve as an additional avenue to communicate with Plaintiffs' counsel.  (Pls.' Mem., ECF No. 99 at 17.)  This Court has rejected similar arguments because "Plaintiffs fail to describe how the use of the QR codes would be effective here and heavily utilized by the putative members."  *Chen v. Thai Greenleaf Rest.*, 2024 WL 3742718, at *6.  Moreover, "[Plaintiffs'] counsel insinuates in the proposed order that the QR codes may be placed on the notice envelope, although that detail is conspicuously left out of [Plaintiffs'] briefing."  *Chengxue Sun v. New G Nails & Spa Inc.*, No. 22-CV-5523 (NRM)(ST), 2023 U.S. Dist. LEXIS 150449, at *25–26 (E.D.N.Y. Aug. 25, 2023).  The Court already authorized the use of WeChat and WhatsApp in addition to mail and email, which negates the need for QR codes.  *Singh*, 2024 WL 308241, at *5.  Accordingly, Plaintiffs' request to disseminate notice via QR codes is denied.

### d.    Plaintiffs' Counsel's Website

Plaintiffs request permission to post notice of the collective action to their counsel's own website.  (Pls.' Mem., ECF No. 99 at 17.)  Plaintiffs do not provide any argument or

evidence that collective action members are likely to visit the website such that this additional method of publication is warranted. *Chui*, 2020 WL 3618892, at *10. "Further, posting to counsel's website presents a substantial risk that opt-in plaintiffs may rely solely on Plaintiffs' counsel, rather than exercising their right to retain their own attorneys." *Ding*, 347 F.R.D. at 432. Thus, the Court denies leave to post notice of the collective action on Plaintiffs' counsel's website.

### e.    Workplace Posting

Plaintiffs request that the Notice of Pendency and Consent Form be posted at the conspicuous locations at AA Forest's premises located at 57-47 47th Street, Queens, New York and that they remain posted throughout the opt-in period. (Pls.' Mem., ECF No. 99 at 17; Troy Decl., Ex. 3, ECF No. 98-3 at 2–3.)

"Courts in this Circuit consistently allow plaintiffs to post notices in conspicuous locations in defendant's workplaces in FLSA in this Circuit to maximize the opportunity for potential opt-in members to join the lawsuit." *Chen v. Thai Greenleaf Rest.*, 2024 WL 3742718, at *6 (collecting cases). Plaintiffs may therefore post notice of the collective action through the opt-in period at 57-47 47th Street, Queens, NY 11378, the site where Plaintiffs and the opt-in plaintiffs worked and where Defendants implemented the allegedly unlawful wage payment practices at issue in this case, though they shall confer with Defendants to implement this directive.

### 3.    Contents of Notice

The Court now turns to the content of Plaintiffs' proposed Notices. The proposed Notice of Lawsuit includes introductory paragraphs explaining the nature of the claims, a statement about Defendants' denial of any wrongdoing, and a summary of an opt-in plaintiff's

legal rights and options.  (Troy Decl. Ex. 2, ECF No. 98-2 at 1–2.)  The Notice of Lawsuit further includes twelve questions with corresponding answers to explain basic concepts including, *inter alia*, why the potential opt-in plaintiff is receiving the notice, instructions about how to join the collective action, the consequences of joining or not joining the lawsuit, and contact information for Plaintiffs' counsel.  (*Id.* at 2–4.)  Defendants object to the length of the proposed opt-in period and the inclusion of NYLL claims in the Notice.  (Defs.' Mem., ECF No. 101 at 14–15.)  As discussed below, the Court directs Plaintiffs to amend the Notices to ensure accurate and timely notice to the putative opt-in plaintiffs.

### a.    Use of Defendants' Logo

Plaintiffs seek to include Lasership's logo on mailings to potential members, relying on the factors used in determining fair use of a logo in copyright cases.  (Pls.' Mem., ECF No. 99 at 16.)  "Courts 'routinely deny' the use of Defendants' logo on FLSA notices as its use runs the risk of a copyright violation and can send a message to recipients that their current or former employer 'wants or expects them to join the action.'"  *Chen v. Thai Greenleaf Rest.*, 2024 WL 3742718, at *6 (quoting *Singh*, 2024 WL 308241, at *5.)  Plaintiffs argue that because the potential opt-in plaintiffs consist largely of non-English-speaking workers with comparatively less education, the use of the logo will appropriately alert them to their rights. (Pls.' Mem., ECF No. 99 at 16.)  "If anything, this argument cuts against the use of the logo, as it creates a significant risk of confusion amongst workers who may believe that Defendants require them to complete the consent form." *Ding*, 347 F.R.D. at 433.  Put another way, "the logo's presence is intended to send a message to recipients that this is an important mailing from their current or former employer and even suggests that [the employer] wants and expects them to join the action. Upon seeing the envelope, the employee will think that it came directly

from [the employer] and thus likely includes either money or tax documents.  The logo thus induces the employee to open and read closely a mailing that they might otherwise ignore." *Panora*, 521 F. Supp. 3d at 180 (imposing sanctions for Plaintiffs' counsel's unauthorized use of defendant-employer's logo on mailings).  Accordingly, Plaintiffs' request to include Lasership's logo on mailings sent to potential class members is denied.

### b.    Defense Counsel's Contact Information

Plaintiffs also request that the Notice exclude defense counsel's contact information. (Pls.' Mem., ECF No. 99 at 17.)  "Inclusion of defense counsel's contact information is not required to render an FLSA notice fair and is likely to create confusion rendering distribution or collection of consent to join forms less effective."  *Arciello v. Cnty. of Nassau*, No. 16-CV-3974 (ADS)(SIL), 2017 WL 4998074, at *7 (E.D.N.Y. Oct. 30, 2017) (citing *Chhab v. Darden Rests., Inc.,* No. 11-CV-8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013)). Accordingly, Plaintiffs' request to exclude Defendants' attorney information is granted.

### c.    Opt-in Period

Plaintiffs further request that the opt-in period should extend to 90 days after notice is disseminated because many of the employees identified in their affidavits are foreign born and because of the mobile nature of employee-truck drivers' work."  (Pls.' Mem., ECF No. 99 at 18.)    Defendants  object,  arguing  that  "Plaintiffs  failed  to  point  to  any  extenuating circumstances suggesting that a potential plaintiff in this case could not do the same thing in 60 days."  (Defs.' Mem., ECF No. 101 at 14–15.)  Although similar requests for 90-day opt-in periods have been granted, it has only been when parties agree that a 90-day opt-in period is appropriate or there are special circumstances shown by the plaintiff that require such an extended opt-in period.  *Chen v. Thai Greenleaf Rest.*, 2024 WL 3742718, at *8 (collecting

cases).  The Court agrees with Defendants that Plaintiffs' proffered rationale does not warrant a longer opt-in period, particularly because Plaintiffs also seek multiple methods of disseminating notice.  (*See* Pls.' Mem., ECF No. 99 at 15–17.)  Therefore, Plaintiffs' request is denied.  The Notice of Lawsuit and any related notices should include a 60-day deadline for opt-in plaintiffs to return their consent forms.

### d.    Recipient for Completed Forms

The Notice of Lawsuit states that any consent form should be mailed to Plaintiffs' counsel.  (Troy Decl. Ex. 2, ECF No. 98-2 at 3.)  If "the notice makes explicit that opt-in plaintiffs can retain their own counsel if they choose, as the proposed notice here does, then it is acceptable and less cumbersome to have opt-in notices sent directly to [Plaintiffs'] counsel. *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 486 (S.D.N.Y. 2016); *see also Lopez*, 2024 WL 4242142, at *8 n.2 (granting plaintiffs' request to have potential plaintiffs send their consent forms to plaintiffs' counsel instead of the Clerk of Court due to a time of increased concern about the institutional costs of operation).  The Notice of Lawsuit includes some language regarding opt-in plaintiffs' right to choose counsel and directives for that counsel to submit the opt-in form on their behalf (though amendments are still required, *see infra*).  Accordingly, potential plaintiffs shall be directed to return their Consent Forms to Plaintiffs' counsel.

### e.    Additional Amendments

Finally, the Court finds that the Proposed Notice of Lawsuit includes misstatements and omissions that preclude "accurate and timely notice concerning the pendency of the collective action" so that potential opt-in plaintiffs "can make informed decisions about whether to participate."  *Aleman-Valdivia*, 2021 WL 4502479, at *8 (cleaned up).

*First*, sections of the Notice of Lawsuit relating to Plaintiffs' counsel and their role in the collective action are potentially misleading because they suggest that opt-in Plaintiffs must retain Troy Law, PLLC as counsel.  For example, Question 9 states, "**How will Troy Law, PLLC be paid?**"  (Troy Decl. Ex. 2, ECF No. 98-2 at 4 (emphasis in the original).)  This question, in bolded font larger than the preceding or subsequent answers, suggests its own response—*i.e.*, that Troy Law PLLC is the only law firm who will be paid if the litigation resolves in Plaintiffs' favor.  Notably, this is not the only case in which Troy Law, PLLC has been directed to amend their notices to assuage the Court's concerns regarding communications with and information about Plaintiffs' counsel in the Notice of Lawsuit.  *See, e.g.*, *Ding*, 347 F.R.D. at 435 (directing Troy Law PLLC to amend the language of how it will be paid in the Notice of Lawsuit); *Chen v. Dun Huang Corp.*, No. 19-CV-11883 (GBD) (BCM), 2021 WL 5234421 at *9 (S.D.N.Y. Nov. 8, 2021) (directing Troy Law PLLC to clarify that it will only receive attorneys' fees upon motion and after a ruling that the requested fees are fair and reasonable).  Thus, Plaintiffs' counsel shall amend the language of the Notice of Lawsuit to be consistent with these directives.

*Second*, the Notice of Lawsuit should include a statement of the Court's neutrality in this case.  *See, e.g.*, *Lora v. To-Rise, LLC*, No. 16-CV-3604 (RRM)(ST), 2017 WL 11604705, at *18 (E.D.N.Y. July 18, 2017), *adopted by* 2017 WL 11604704 (E.D.N.Y. Sept. 15, 2017) (adding the following language for a reminder notice: "The Court has taken no position in this case regarding the merits of the Plaintiffs' claims or of the Defendants' defenses.  The Court does not encourage or discourage your participation in this case.").

*Third*, the Consent Form appears to include prefilled fields for each opt-in plaintiff's name, address, phone number, email, work location, and employment start and end dates.

(Troy Decl. Ex. 2, ECF No. 98-2 at 5–6.)  Plaintiffs' counsel has previously been admonished for this practice "because it suggests to employees that [Defendants] approve[] of or even encourages them to join the action" and because of the risk of Plaintiffs' counsel's errors when completing the fields before mailing.  *Panora*, 521 F. Supp. 3d at 180; *Ding*, 347 F.R.D. at 435.  Thus, Plaintiffs shall *not* prefill opt-in plaintiffs' information on the Consent Form.

*Finally*, the Notice also mentions the NYLL claims in this case, which Defendant argues should not be included in an FLSA collective notice.  (Defs.' Mem., ECF No 101 at 14.)  "While courts . . . have held that 'in some circumstances where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims,' these cases involve circumstances in which the plaintiffs sought to send the notice to potential plaintiffs with claims dating back six years, covering the full NYLL statute of limitations period."  *Cinar*, 2021 WL 7366924, at *9 (quoting *Garriga*, 2018 WL 4861394, at *6).  "In this case, however, given that plaintiff seeks to send the Notice only to potential opt-in plaintiffs with claims dating back three years -- a subset of the potential NYLL plaintiffs -- this Court holds that it would unnecessarily confuse potential opt-in plaintiffs to include reference to the NYLL claims."  *Cinar*, 2021 WL 7366924, at *9 (citing *Xuguang Chang v. CK Tours, Inc*., No. 18-CV-6174 (PAC), 2019 WL 1873022, at *2 (S.D.N.Y. Apr. 26, 2019)).  Therefore, the Notice should not include the NYLL claims.

### 4.    Initial Text and Email Notice

Plaintiffs request permission for the Court to circulate an abbreviated version of the Notice of Lawsuit via text message and email.  (*See* Pls.' Mem., ECF No. 99 at 15.)  The text and email message notices consist of the following:

> If you worked for AA FOREST INC. d/b/a Lasership, located at 57-47 47th Street, Queens, NY 11378, YOU LIANG GUO a/k/a Youliang Guo or PENG YANG GUO a/k/a Pengyang Guo a/k/a Kevin Guo, you are eligible to recover unpaid minimum wages, unpaid overtime pay, and "liquidated damages," which double the amount of wages owed under the Fair Labor Standards Act ("FLSA") and/or New York Labor Law ("NYLL").
>
> For additional information about the case, including how to join, visit [Insert URL].
>
> THIS ELECTRONIC NOTICE AND ITS CONTENTS ARE NOT SPAM OR SOLICITATION TO JOIN A LAWSUIT. THIS NOTICE AND ITS CONTENTS HAVE BEEN AUHTORIZED [*sic*] BY THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK. THE COURT HAS NOT YET RULED ON WHETHER PLAINTIFFS' CLAIMS OR DEFENDANTS' DEFENSES HAVE ANY MERIT. HOWEVER, THE COURT IS NOT GIVING ANY ADVICE ON WHETHER YOU SHOULD OR SHOULD NOT JOIN THE LAWSUIT.

(Troy Decl. Ex. 4, ECF No. 98-4 (text); *see also id.* Ex. 5, ECF No. 98-5 (email with substantially similar language).) *First*, the email and text notices should include a statement regarding Defendants' denial of any wrongdoing and an opt-in plaintiff's right to choose their own counsel. *Second*, consistent with the Court's ruling above, all mention of Plaintiffs' counsel's website, any other website, and the NYLL claims should be removed. (*See* § III.C.2.d. & C.3.e., *supra*.) *Third*, Plaintiffs should carefully review all notices to ensure appropriate formatting and spelling. Accordingly, the Court approves the substance of the Notice Text and Email Message as amended.

### 5. Reminder Notices

Plaintiffs request that the Court authorize them to send reminder notices by mail, email, and text to all unresponsive potential collective action members at the midpoint of the opt-in period. (Pls.' Mem., ECF No. 99 at 19.) Reminder notices further serve the purpose of notifying all potential opt-in plaintiffs of the pendency of the action. *See, e.g., Tung v. Banzai*

*Steakhouse Inc.*, No. 22-CV-5750 (KMK), 2023 WL 5827643, at *6 (S.D.N.Y. Sept. 8, 2023) (overruling defense objection to reminder notices and allowing plaintiffs to remind potential plaintiffs about the statute of limitations); *Cabrera*, 2017 WL 4326511, at *8 ("Practical requests such as [notices and reminder notices] reasonably further the purpose of notice of a collective action under the FLSA").  The proposed Reminder Notices alert the potential opt-in plaintiffs that they have received the Notice of Lawsuit and remind them of the appropriate method of joining the lawsuit.  (Troy Decl. Exs. 6–8, ECF Nos. 98-6 through 98-8.)  The proposed Reminder Notices thus meet the FLSA standard for notification, subject to the below modifications.

While the Reminder Notices are not intended to reiterate every provision of the Notice of Lawsuit, they should be crafted to avoid misleading potential opt-in plaintiffs or presenting a one-sided view of the litigation.  For example, unlike the Notice of Lawsuit, the proposed Reminder Notices do not remind opt-in plaintiffs of their discovery and preservation obligations, which "insure[s] that opt-in plaintiffs understand that their participation would entail greater obligations that participation in some Rule 23 class actions." *Hanming Feng v. Soy Sauce LLC*, No. 15-CV-3058 (ENV)(LB), 2016 WL 1070813, at *6 (E.D.N.Y. Mar. 14, 2016).  Plaintiffs shall include the last paragraph of the Answer to Question 4 of the Notice of Lawsuit, or a shortened version thereof, to remind potential opt-in plaintiffs of their discovery obligations.

Additionally, the Reminder Notices omit critical reminders about opt-in plaintiffs' right to choose their own attorney and the Court's neutral position on the merits notwithstanding its approval of the Notices.  Plaintiffs must include language indicating that opt-in plaintiffs may

retain their own counsel and that the Court does not encourage or discourage participation in the collective action.

In addition, the instructions in the Reminder Notices impermissibly suggest that opt-in plaintiffs are required to act even if they do not want to join the lawsuit. Specifically, the email Reminder Notice states, "IMPORTANT: Our records indicate that you have not submitted a Consent Form. In order to participate in this Collective Action Lawsuit, you must complete the enclosed Consent to Join Form[.]" (Troy Decl. Ex 8, ECF No. 98-8.) All three Reminder Notices state: "Take action to be permitted to join this lawsuit." These directives do not clarify that participation is voluntary.[7] An unsophisticated opt-in plaintiff could conclude that the only option is to complete and return the Consent Form to Plaintiffs' counsel, even if he or she did not want to join the collective action. The Court cannot and will not permit such misleading language. Thus, the phrase "[i]n order to participate" shall be amended to "if you want to participate" or "if you choose to participate." The "take action" statement also should be preceded by similar language to accurately reflect the potential collective action members' optional (not mandatory) participation in the litigation.

Accordingly, the Court authorizes Plaintiffs to issue the Reminder Notices with the foregoing amendments.

### 6.    Opt-In Plaintiffs' Contact Information

Plaintiffs further request that the Court direct Defendants to produce, within fourteen days from the date of this Order, a Microsoft Excel data file with the names, nicknames, last

---

[7] In contrast, the proposed Consent Form clearly instructs opt-in plaintiffs to complete and return the form "IF YOU RECEIVED THIS FORM AND *WANT TO JOIN THIS LAWSUIT*." (Troy Decl. Ex. 2, ECF No. 98-2 at 5 (emphasis added).)

known addresses, telephone numbers, email addresses, social media handles, work location, dates of employment, compensation rate, work location(s), and positions for all non-exempt employees who worked for Defendants from November 15, 2017 to the present. (Pls.' Mem., ECF No. 99 at 14–15; *see also* Troy Decl. Ex. 3, ECF No. 98-3 at 1–2 (adding gender to the proposed list of identifiers).) Defendants object to providing the contact information of other employees because they simply do not have the information of other employees. (Tr., ECF No. 105at 23:16–24:4.)

In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members. *McPherson*, 2024 WL 4265844, at *8. However, the Court denies any request for disclosure of potential opt-in plaintiffs' gender, which "has no bearing on where and how notice will be delivered to the potential collective action members." *Chen v. Kicho Corp.*, No. 18-CV-7413 (PMH)(LMS), 2020 WL 1900582, at *9 (S.D.N.Y. Apr. 17, 2020). In addition, the Court already permitted dissemination in direct messages via WhatsApp and WeChat. (*See* § III.C.2.b., *supra*.) Defendants must disclose any known WeChat or WhatsApp contact information (to the extent that it differs from regular telephone numbers), but no other social media usernames or handles. If Defendants do not possess the contact information of the potential collective members, Defendants shall file a declaration from AA Forest's records custodian that no such information exists. Otherwise, Plaintiffs' request for the production of a spreadsheet for all non-exempt employees' information as described above is granted.

D.    **Pre-Class Certification Discovery**

Plaintiffs also seek contact information of the broader potential class of Defendants' employees to facilitate Plaintiffs' efforts to satisfy the class action certification requirements set forth in Federal Rule of Civil Procedure 23.  (Pls.' Mem., ECF No. 99 at 20.)

"Pre-class certification discovery 'is often necessary in order to provide the court with sufficient information to determine whether certification is appropriate'" in light of the requirements set out in Rule 23.  *Singh,* 2024 WL 308241, at *5 (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198 (LAK)(JCF), 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007)).  However, courts "have denied such a request without prejudice, finding it potentially 'cumulative' and thus premature, where a plaintiff has not demonstrated that 'plaintiffs' ability to demonstrate commonality, predominance and typicality will . . . necessarily require obtaining discrete employment information of any individual class members.'"  *Benavides,* 166 F. Supp. 3d at 491 (quoting *Gordon v. Kaleida Health,* No. 08-CV-378S F, 2012 WL 432885, at *4 (W.D.N.Y. Feb. 9, 2012)); *see also Beaton v. Verizon New York, Inc.*, No. 20-CV-672 (BMC), 2020 WL 6449235, at *3 (E.D.N.Y. Nov. 3, 2020) ("[C]ourts have refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify new clients, rather than to establish the appropriateness of certification.") (internal quotations and citations omitted).  "Requests for contact information and records are particularly weak when a plaintiff 'has not sought discovery through other means that would support [their] Rule 23 claim' and has not otherwise 'demonstrated that he is entitled to the putative class contact information.'"  *Id.* (quoting *Jenkins v. TJX Companies, Inc.,* No. 10-CV-3753, 2011 WL 1563677, at *2 (E.D.N.Y. Apr. 25, 2011)).  While the parties have engaged in some traditional

methods of discovery, it remains unclear what discovery the parties have obtained and what remains pending.  As a result, Plaintiffs' request for contact information of the putative Rule 23 class members is premature and the motion is denied without prejudice and with leave to renew.

### E.    Leave to Amend

Finally, Plaintiffs seek leave to amend the Amended Complaint to adjudicate opt-in plaintiffs' state law claims.  (Pls.' Mem., ECF No. 99 at 21.)  As one court noted in response to this request from the same Plaintiffs' counsel:

> [Federal Rule of Civil Procedure] 7(b) requires that all motions "state with particularity the ground therefore, and shall set forth the relief or order sought." Fed. R. Civ. P. 7(b)(1).  Furthermore, [Rule] 7(b) requires that, in the case of a motion to amend, that the movant supply a copy of the proposed amendment. The rationale behind this rule is simple; it is unreasonable, and therefore prejudicial, to expect a defendant to prepare an opposition to a hypothetical complaint that does not yet exist.  I therefore find that Plaintiff's motion for leave to amend is improper at this time.

*Chengxue Sun*, 2023 U.S. Dist. LEXIS 150449, at *30–31 (citing *In re Crude Oil Commodity Litig.*, 2007 WL 2589482, at *4 (S.D.N.Y. Sept. 7, 2007) and *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 233 F.R.D. 327, 330 (S.D.N.Y. 2005)).  The same rationale applies to Plaintiffs' request here: anticipatory amendment is premature, and even if it was not, Plaintiffs fail to comply with Rule 7(b).  Accordingly, Plaintiffs' motion to amend the Complaint is denied with leave to renew.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Court **grants in part and denies in part** Plaintiffs' motion for conditional certification, as follows:

1. Plaintiffs have met their minimal burden of showing that the potential opt-in class members are similarly situated for the purposes of conditional certification.  The potential class includes all nonexempt and nonmanagerial current and former employees of AA Forest Inc. d/b/a Lasership, who performed work as nonexempt, non-managerial deliverymen at 57-47 47th Street, Queens, New York 11378 between November 15, 2017 and the present;

2. The applicable statute of limitations shall be the three years warranted for willful violations of the FLSA;

3. The FLSA statute of limitations for opt-in plaintiffs shall be tolled from September 16, 2024, the date Plaintiffs' second motion for conditional certification was filed, until the date of this Order;

4. The Court conditionally approves dissemination of the Notices, subject to the amendments set forth in this Order, to provide opt-in plaintiffs with accurate and timely notice concerning the pendency of the collective action;

5. Plaintiffs shall disseminate the Notices via regular mail, email, and via WhatsApp and WeChat within two weeks of the Court's approval of the final versions of the Notices.  Defendants shall post the approved Notice and Consent to Join Lawsuit in a conspicuous location at AA Forest's warehouse within two weeks of the Court's approval of the final versions of the Notices; and

6. On or before **October 17, 2025**, Defendants shall produce an Excel (or comparable computer application) spreadsheet of the last known addresses, telephone numbers, email addresses, dates of employment, titles, compensation rates and hours worked per week for all potential class members but shall not

be required to provide information about employees' genders or their social media usernames or IDs.  If Defendants do not possess such information, on or before **October 17, 2025**, Defendants shall file a declaration from AA Forest's records custodian that no such information exists.

Plaintiffs shall revise the Notices in accordance with this Order and serve a draft on all Defendants by **October 10, 2025**.  Defendants must serve their objections on, or give their consent to, Plaintiffs by **October 17, 2025**.  The parties shall file the final revised Notices as a joint motion for approval by **October 24, 2025**.

**SO ORDERED.**

Brooklyn, New York
September 30, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge